## ADAMS v. SMITH.

Motion for New Trial — Evidence, Sufficiency of — Married Women—Homestead, Mortgage of—Acknowledgment, Certificate of—Acknowledgment of Wife to Mortgage of Homestead—Impeachment of Certificate of Acknowledgment—Burden of Proof—Appeal and Error.

1. The sufficiency of the evidence to sustain a finding is adequately challenged by a motion for new trial on the ground that the finding is "against and contrary to the weight of the evidence."

2. The evidence examined and held to show that the wife of the mortgagor of a homestead, who joined with him in the execution thereof, knew at the time that she was signing such mortgage.

3. Although a married woman may have been prevailed upon against her own judgment to join with her husband in the execution of a mortgage of the homestead, that is not sufficient to avoid it in the absence of concealment, misrepresentation or fraud; there being no pretense of coercion, or that her signing was caused through fear.

4. Whether a certificate of acknowledgment to a conveyance is held to be *prima facie* evidence only, or conclusive in the absence of fraud or duress, the evidence to impeach the certificate must be cogent, clear and convincing.

5. The burden of proof rests upon the party assailing a certificate of acknowledgment, since a strong presumption exists in favor of its truth.

6. Without deciding that in every possible case the unsupported testimony of the grantor will be insufficient to impeach a certificate of acknowledgment, such testimony, as a general rule, should be supported either directly by testimony corroborative of the grantor's assertions, or by evidence of facts and circumstances that render the grantor's testimony very probable, and, in connection with clear and consistent statements of the grantor, make the proof of the falsity of the certificate satisfactory and convincing.

7. The certificate of acknowledgment to a mortgage of a homestead stating that the wife, who joined in the execution

thereof, voluntarily acknowledged the execution thereof,. and that the instrument was made known to her, and the effect of its execution explained to her by the officer; the certificate is entitled to a presumption that the officer performed his duty, and that the wife did, as certified, voluntarily acknowledge the execution of the mortgage, which implies that she understood the instrument and the effect of her signing and acknowledging the same.

8. The wife of the mortgagor of a homestead, who joined in the execution thereof, sought to avoid the same, claiming. that she did not understand that she was signing a mortgage. Her testimony was unsupported, and, in some respects, evasive, while it was contradicted by the officer who took the acknowledgment; and the certificate stated that she voluntarily acknowledged her execution of the instrument, and that the same was made known, and the effect of its execution explained, to her by the officer. The evidence is examined, and it is *held* not to be sufficiently clear and convincing to overthrow the certificate.

9. While in an ordinary case of conflicting evidence, the judgment will not usually be disturbed on error for insufficiency of the evidence, there being evidence to support the judgment, that rule does not apply where the certificate of acknowledgment to a conveyance has been adjudged false,. upon the unsupported testimony of the grantor, as against the testimony of the officer and other facts, and the principle underlying the impeachment of such a certificate appears to have been disregarded.

10. Land titles should not be thrown into confusion and uncertainty by a construction of the statutes that will have the effect to disturb the security of titles, unless such a construction should be clearly required.

11. The statute, when a mortgage upon a homestead was executed and acknowledged, requiring the officer taking the acknowledgment to endorse upon the instrument "a certificate of the acknowledgment thereof," and the statute declaring void a mortgage of the homestead, unless the wife of the owner, if he have any, shall, separate and apart from her husband, freely and voluntarily sign and acknowledge the same, a certificate of acknowledgment to such a mortgage is not void on its face for failing to state that the examination of the wife occurred separate and apart from her husband.

12. The statute respecting the mortgage of a homestead requir-
ing the wife of the owner, if he have any, to freely and
voluntarily sign and acknowledge the same separate and
apart from her husband, it is permissible for the parties to
show non-compliance with the law as to separate exam-
ination, where the certificate contains no reference to such
an examination.

[Decided January 10, 1903.]                    (70 Pac., 1043.)

ERROR to the District Court, Johnson County, HON.
JOSEPH L. STOTTS, Judge.

Action by Ann D. Adams against John R. Smith and
Agnes D. Smith, his wife, for the possession of certain
lands, including a tract claimed by the defendants as a home-
stead. Plaintiff derived title through a foreclosure sale un-
der a mortgage executed by the defendants. John R. Smith
suffered default. The judgment awarded the homestead to
the defendant, Agnes D. Smith, and the other premises to
the plaintiff. The plaintiff brought proceedings in error,
alleging error in the judgment in so far as it adjudged de-
fendant entitled to the homestead. The material facts are
stated in the opinion.

*Parmelee & Hill,* for plaintiff in error.

[Counsel discussed the evidence at length to show that
the findings as to the acknowledgment, and defendant's
knowledge of the instrument signed by her were not sus-
tained.] It is not required that the notary shall read the
conveyance to the grantor. (Romer v. Welcker (Tenn.),
42 S. W., 439.) Mrs. Smith was not in a position to deny
her knowledge of the nature of the instrument. (Edgell v.
Hagens (Ia.), 5 N. W., 136; Van Sickles v. Towne, id.,
148.) Her interest is to be considered as affecting her tes-
timony. (Ford v. Osborne, 45 O. St., 5; Pierce v. Feagans,
39 Fed., 590.)

The testimony of the defendant taken as a whole certainly
cannot be said to possess that clearness and cogency which

all of the courts agree are necessary in order to overthrow an official certificate, even if it should be regarded that her testimony alone would be of sufficient weight. So far from her testimony being clear and logical, it is certainly not too much to say that it is characterized by an indistinctness, a lack of directness, and a considerable measure of improbability, if indeed, it does not involve contradictions more disastrous.

In the absence of fraud or duress, alleged and proven by evidence clear, cogent and convincing beyond reasonable doubt, this certificate is, in most jurisdictions, regarded as conclusive. (3 Washburn on Real Property, Sec. 347; Jones on Mortgages (4th Ed.), Sec. 539; Hitz v. Jenks, 123 U. S., 297; Freiberg v. DeLamar (Tex.), 27 S. W., 151; Russell v. Union, 73 Ill., 337; Sassenberg v. Huseman (Ill.), 55 N. E., 346; Young v. Duval (D. C.), 109 U. S., 573; Williamson v. Carskaden, 36 O. S., 664; Baldwin v. Snowden, 11 O. S., 203; Banning v. Banning, 80 Cal., 271; 13 Am. St., 156; Meyer v. Gossett, 38 Ark., 377; Murrell v. Diggs, 84 W. Va., 900; 10 Am. St., 893; Pickens v. Knisely, 6 Am. St., 630; 29 W. Va., 1; Summers v. Sheern (Tex.), 37 S. W., 246; Citizens Sav. & Loan Assn. v. Heiser (Pa.), 24 Atlantic, 733; Brady v. Cole (Ill.), 45 N. E., 438.)

It is further well established in most states that even fraud may not be proven for the purpose of overthrowing the certificate in the hands of a party who is himself innocent and has acquired his title for value without notice of the fraud. (Paxton v. Marshall (Ill.), 18 Fed., 361; Pickens v. Knisely (29 W. Va., 1), 6 Am. St., 630; Murrell v. Diggs, 84 Va., 900; 10 Am. St., 893; De Arnaz v. Escandon, 59 Cal., 489; Baldwin v. Snowden, 11 O. S., 203-212; Ronner v. Welcker (Tenn.), 42 S. W., 439; Summers v. Sheern (Tex.), 37 S. W., 246; Loan Assn. v. Heiser (Pa.), 24 At., 733; Webb v. Burney (Tex.), 7 S. W., 841; Rubelman v. Rummell, 72 Ia., 40; 33 N. W., 354; Pool v. Chase, 46 Tex., 207; Williams v. Pouns, 48 Tex., 141.)

If this rule, upheld by such weight of authority, is found to prevail here, it is decisive of all questions involved in this case.

But we are compelled to recognize that there are several jurisdictions denying the rule as to the conclusiveness of a certificate of acknowledgment and permitting the introduction of parol evidence to dispute it. Among the states so holding are New York, Michigan, Minnesota, Missouri, Iowa and Wisconsin. The peculiar ruling upon this subject is doubtless in every instance due to some statute. (1 Ency. of Law (2d Ed.), 556.)

It will doubtless be contended that a section of our Revised Statutes has the effect to admit parol evidence in opposition to a certificate of acknowledgment when attacked collaterally. Section 2602, Revised Statutes of Wyoming: "In all the courts within this State the certificate of a notary public, over his hand and official seal, shall be received as presumptive evidence of the facts contained in such certificate: *Provided,* That any person interested as a party to a suit may contradict, by other evidence, the certificate of a notary public."

Except for this statute it is believed that there could be no question of the acceptance by the courts of this State of the common law rule prevailing wherever not modified by statute, recognizing the conclusiveness of a notary's certificate of acknowledgment except in cases of fraud. It is then important to know just how far the statute widens the application of the common law, for, by the familiar rule of construction, such statutes are not to be extended by interpretation beyond their plain and necessary meaning. This statute may have had either one of two purposes: It may have been to limit the force of certificates of acknowledgment as regulated elsewhere in the statutes, by providing that they shall not be deemed conclusive; or, on the other hand, it may have been to extend the former rule as to certain certificates which would not be, aside from this statute, acceptable as evidence.

The defendant doubtless contends for the former. It will be observed that the statute providing for the acknowledgment of conveyances, and the effect to be given the same, is found in another chapter, and entirely in another connection, while the section above quoted has no especial mention of certificates of acknowledgment to conveyances. The certificate of a notary mentioned in this section is certainly not limited to certificates of acknowledgment, if indeed it has any reference to such, but comprehends certificates of a different character. This section is found in the chapter relating to notaries public, apart from any connection with the execution or proof of conveyances, and is limited in its application solely to the official certificates of notaries public. It does not apply to certificates by any other officer.

It being conceded that independent of this statute the common law rule of the conclusiveness of certificates of acknowledgment would prevail here, and that this statute affects the conclusiveness of certificates by a notary only, if then we assume that the statute applies to certificates of acknowledgment, we would be involved in the absurdity of applying two separate rules as to the force and effect of certificates of acknowledgment; in the case of such certificates by a clerk or judge of court, they would be held conclusive except for fraud; and when made by a notary they would be open to collateral attack. It cannot be supposed that the Legislature intended any such absurdity, but it is far more reasonable to regard the section above quoted as extending the rules of evidence by making certain certificates not theretofore admissible, receivable as presumptive proof, and as not affecting in any manner certificates of acknowledgment to conveyances, which are fully provided for in another part of the statutes. (Banning v. Banning, 80 Cal., 271; Moore v. Hopkins, 83 id., 270.)

If the section quoted is to be interpreted in the light of the status of the law before the passage of the act and the change proposed to be effected by the remedial statute, there can be little doubt that the true meaning will be found to

relate to the admissibility of certificates not elsewhere pro-
vided for, and not to the subject of a rule of evidence in re-
gard to certificates of acknowledgment—a subject entirely
foreign to the purposes of the chapter in which this pro-
vision is found.

If it should be considered that the section above quoted
applies to certificates of acknowledgment by notaries, as well
as to other of their official certificates, it by no means fol-
lows that such evidence as was here adduced is either com-
petent or sufficient to rebut the force of the certificate. The
statute must still be interpreted with a view to the defect of
the old law and the purpose to be accomplished by the
amendment. If the language of the amendment fairly ac-
complishes this object, the interpretation must not be ex-
tended beyond the plain provisions of the statute. But for
this statute certificates of acknowledgment would be re-
garded as conclusive. The statute, it is said, changes this.
It provides that they may be contradicted "by other evi-
dence." It does not say by what kind of evidence. Such
evidence must be competent, of course, but what is the test
of its competency? The only change wrought is to permit
the certificate to be attacked collaterally. But when so
attacked, the evidence offered for that purpose must be
such as is competent under the general rules of evidence—
that is, such evidence as is regarded competent when a cer-
tificate is attacked directly. (Johnson v. Van Velsor, 43
Mich., 219; 3 Washburn R. Prop., 347; Jones Mort., 539;
Ins. Co. v. Franks, 53 Ia., 618; Miller v. Walbert, 71 Ia.,
539; Rubelman v. Rummell, 72 Ia., 40; Biggers v. St.
Louis, &c., 9 Mo. App., 210.)

Statutes which so modify the general rule as to admit im-
peaching testimony without allegation and proof of fraud,
by no means do away with the rule as to the positive and
indubitable character and force of the testimony required
successfully to overcome an official certificate. On the con-
trary, the latitude allowed to attack what is usually regarded
as conclusive, makes it all the more necessary that the most

clear and convincing proof should be adduced, and of sufficient force to leave no reasonable doubt. The relaxation of the rule beyond this would lead to endless confusion and uncertainty of titles. (Mather v. Jarel, 33 Fed., 366; Howtienne v. Schnoor, 33 Mich., 274; Smith v. Allis (Wis.), 9 N. W., 155; Newton v. Halley, 6 Wis., 592; Barret v. Davis (Mo.), 16 S. W., 378; Thompson v. B. & L. Assn. (Tenn.), 37 S. W., 704; Dikeman v. Arnold, 78 Mich., 455; Pierce v. Feagans, 39 Fed., 587.) Whatever the rule as to conclusiveness, there is no distinction as to the strength of evidence necessary to overthrow the certificate. (Ford v. Osborn, 45 O. St., 1; Young v. Duval, 109 U. S., 573; Brady v. Cole (Ill.), 45 N. E., 348; Russell v. Union, 73 Ill., 337; Sassenburg v. Huseman (Ill.), 55 N. E., 346; Williamson v. Carskadden, 36 O. S., 664; Pickens v. Knisely, 29 W. Va., 1; 6 Am. St., 630; Summers v. Sheern (Tex.), 37 S. W., 246; Loan Assn. v. Heiser (Pa.), 24 Atl., 733.)

Many courts have gone to the extent of laying it down as a rule that the unsupported testimony of the person whose acknowledgment appears in the certificate is never sufficient to overthrow such certificate. And many courts add that such testimony, even with slight corroboration, cannot be permitted to have that effect. (Johnson v. Van Velsor, 43 Mich., 219; Thompson v. Loan Assn., 37 S. W., 704; Sassenburg v. Huseman, 55 N. E., 346; Oppenheimer v. Wright, 106 Pa. St., 569; Loan Assn. v. Heiser, 24 Atl., 733; David v. Howard, 50 N. E., 258; Kerr v. Russell, 69 Ill., 66; Brady v. Cole (Ill.), 45 N. E., 438; Worrell v. McDonald, 66 Ala., 572; Young v. Duval, 109 U. S., 573; Tuschinski v. R. R. Co. (Ill.), 52 N. E., 920; Biggers v. St. Louis, &c, & Co., 9 Mo. App., 210.)

The following cases are suggested for comparison with the one at bar in respect to the weight and character of the evidence which has been regarded as insufficient to overcome the presumption of verity implied by the notary's certificate. (Bird v. Adams, 37 Ia., 292; 9 N. W., 224;

Freiburg v. De Lamar, 27 S. W., 151; Insurance Co. v. Nelson, 103 U. S., 544; Oliphant v. Liversidge (Ill.), 30 N. E., 334; Insurance Co. v. Corey (N. Y.), 31 N. E., 1095; Cover v. Manaway, 115 Pa. St.; 2 Am. St., 552.)

*E. E. Enterline* and *Alvin Bennett,* for defendant in error.

The motion for a new trial is insufficient and presents nothing for review. While counsel for plaintiff in error discuss the insufficiency of the evidence to sustain certain findings, no such assignment was made in the motion for a new trial. The assignments are that certain findings are against the weight of the evidence and contrary to law. And a general ·assignment as to the admission and rejection of evidence. The assignments are wholly insufficient and present no questions for review. (R. S., Sec. 3746; Miller v. State, 3 Wyo., 657.)

It is contended by counsel for plaintiff in error that the certificate of the notary is conclusive as to the facts therein contained. It seems strange to us that counsel should contend for such a doctrine when the case was tried by them on an entirely different theory. Before the question of the acknowledgment was attacked in the lower court by the defendant, the plaintiff placed the notary upon the stand and attempted to explain the acknowledgment. It was admitted in the pleadings that a certain portion of the land in controversy was the homestead of defendants. And the acknowledgment did not show that the wife was examined separate and apart from her husband at the time of signing, and so the notary was placed upon the stand for the purpose of proving that the acknowledgment was separate and apart from the husband, and, of course, this opened up the question of acknowledgment fully. It ·is evident that the plaintiff cannot complain, even if its position were correct, that the certificate of acknowledgment is conclusive of the facts therein contained. (First Nat. Bank v. Foster, 63 Pac., 1056.)

The acknowledgment was defective on its face, and oral

testimony cannot be considered to supply the defect.   (R.
S. 1887, Secs. 8, 20, 1667, 2784; Young v. Duval, 109 U. S.,
573; Giriffith v. Ventres, 91 Ala., 366; 24 Am. St., 918;
1 Ency. L. (1st Ed.), 150-152. )

Section 8, *supra,* provides that the notary must endorse
on the instrument a certificate of the acknowledgment.   Sec-
tion 20, *supra,* provides that when an instrument is properly
acknowledged, or, in other words, acknowledged in accord-
ance with the laws of the State, it may be recorded.   Section
1667, *supra,* provides that the certificate of a notary·over
his hand and seal shall be received in evidence by the courts
as presumptive evidence of the facts therein contained, and
permits an interested party to contradict the certificate.   It
does not permit the notary or any person to supply defects
in the certificate by oral testimony.   Under the provisions
of Section 2784, the wife must be examined separate and
apart from her husband, and the certificate of the notary
did not show compliance with such provision.

As to the general sufficiency of the evidence to support
the findings of the court as to falsity of the recitals in the
certificate of acknowledgment, Section 2784, *supra,* reads
as follows: "Every owner or occupant of a homestead, as
established herein, may voluntarily sell, mortgage or other-
wise dispose of·or incumber the same: *Provided,* That every
such sale, mortgage, disposal or incumbrance shall be ab-
solutely void, unless the wife of the owner or occupant of
such homestead, if he have any, shall, separate and apart
from her said husband, freely and voluntarily sign and ac-
knowledge the instrument of writing conveying, mortgag-
ing, disposing of, or incumbering such homestead, and the
officer taking her acknowledgment shall fully apprise her
of her right and the effect of signing and acknowledging
such instrument."

In order to learn how absolutely the notary failed to com-
ply with the conditions of the section, *supra,* it is only neces-
sary to examine his testimony, but when the testimony of
the defendant and her husband is examined in connection

therewith it will be seen that the overwhelming proof sustains the findings as to the falsity of the certificate. ' The notary does not pretend that he ever explained to the defendant the effect of signing the instrument, nor did he pretend to testify that he fully or at all apprised her of her rights. His efforts were directed in getting her to sign, and it was not his object or intention to apprise her of her rights or of the effect of signing on her part.

Conceding the plaintiff has some cause to complain, there is a conflict of evidence, and this court will not disturb a finding based on conflicting evidence. (Marshall v. Rugg (Wyo.), 44 Pac., 700; Hood v. Smiley, 5 Wyo., 70; Edwards v. Murray, 5 Wyo., 153; Hester v. Smith et al., 5 Wyo., 291; Rainsford v. Massingale, 5 Wyo., 9.)

The statute not having been complied with, it was unnecessary to show fraud. (Hart v. Church, 126 Cal., 471; 77 Am. St., 195.) The fact that the deed was placed on record cannot be considered as a delivery. (Ins. Co. v. Campbell, 35 Am. St., 166; Cravenna v. Rossiter, 116 Mo., 338; 38 Am. St., 606.)

*Parmelee & Hill,* in reply.

The assignment as to evidence in the motion for new trial was sufficient. (Alt v. R. R. Co., 57 N. W., 1127.) The statute did not require the certificate to show separate examination; and it was not necessary. (Chestnut v. Shane's Lessees, 16 O., 599.) The trial court did not hold the certificate to be void on its face.

POTTER, JUSTICE.

In this action the plaintiff in error seeks to recover possession of certain real estate situated in Johnson County. Her suit was brought against John R. Smith and his wife, Agnes D. Smith. The latter defended on the ground that a part of the property was and had been the homestead of the defendants, and she had not executed any release thereof. Plaintiff in error was successful except as to the homestead.

As to the premises constitutng such homestead, the defendant in error, Agnes D. Smith, was found and adjudged to be entitled to the possession thereof. The plaintiff comes to this court alleging error in the judgment awarding the homestead premises to defendant in error, and in the order overruling her motion for new trial.

Counsel for defendant in error challenge the sufficiency of the motion for new trial to raise any question as to the sufficiency of the evidence to support the findings and judgment. The statute authorizes the vacation of a verdict of a jury, report of a referee or master or decision of the court for any of certain enumerated causes, among them being the following, viz.: "That the verdict, report or decision is not sustained by sufficient evidence or is contrary to law." (R. S., Sec. 3746.) This case was tried to the court without a jury; and there was a separate statement of conclusions of fact and law. The plaintiff claimed title under a foreclosure sale by virtue of the provisions of a certain mortgage executed by the defendants. The trial court found, among other things, that the defendant in error did not freely and voluntarily sign and acknowledge the mortgage; and did not acknowledge that she freely and voluntarily signed and acknowledged the same. As conclusions of law, it was found that the mortgage was void as to the homestead, for the reason that no legal acknowledgment of the execution thereof by defendant in error had been taken; and that she was entitled to the possession of said homestead free from any claim of the plaintiff.

The motion for new trial contains the following, among other grounds: "1. Because the finding of the court that the defendant, Agnes D. Smith, is entitled to the homestead described is against and contrary to the weight of the evidence and the law in the case. 2. Because the finding of the court that the said defendant, Agnes D. Smith, did not freely and voluntarily execute and acknowledge the mortgage referred to is against and contrary to the evidence and the law of the case. 3. Because the finding of the court

that the certificate of the notary to said mortgage, so far as the same related to the acknowledgment of said Agnes D. Smith, was false and untrue is against and contrary to the weight of the evidence and the law applicable to the case. 4. That the judgment of the court rendered in accordance with .the said findings is contrary to the law and to the weight of the evidence."

. It seems to be the contention of counsel that the grounds above stated do not amount to an assignment that the decision is not sustained by sufficient evidence. The objection goes to the employment of the words, "against and contrary to the weight of the evidence." But we are of the opinion that these words, as used in the motion, are adequate to challenge the sufficiency of the evidence to sustain the decision. Where the ground of a motion for new trial was that the findings were contrary to the evidence, it was held sufficient to raise the question as to whether or not the findings were sustained by sufficient evidence. (White v. Beal & Fletcher Gro. Co., 65 Ark., 278. To the same effect, Collins v. Maghee, 32 Ind., 268.) In that case the court, by Mr. Justice Elliott, said: "It presents substantially the cause provided by the statute. If the verdict is not sustained by sufficient evidence, then it is contrary to the evidence." In Ohio, it was said: "A verdict, report or decision should be regarded as against the weight of the evidence whenever the evidence is not sufficient to sustain it. A reviewing court, therefore, by force of the provision above noticed, that a new trial may be granted where the verdict, report or decision is not sustained by sufficient evidence, may grant a new trial because the verdict, etc., is against or contrary to the weight of the evidence." (Weaver v. Ry. Co., 55 O.. St., 491.) Where, in Wisconsin, a new trial was granted on the ground that the verdict was not supported by the evidence, the court said: "This is the same as saying that it is against the weight of evidence." (Wilson v. City of Eau Claire, 89 Wis., 47. To the same effect, Slater v. Drescher, 72 Hun., 425; Metropolitan R.

R. Co. v. Moore, 121 U. S., 558; Algeo v. Duncan, 39 N. Y., 313; McDonald v. Walter, 40 N. Y., 551.)

Moreover, the motion in the case at bar charges that the findings referred to, as well as the judgment, are against and contrary to law; in this respect using the language of the statute; and it is argued that as a matter of law the evidence is insufficient to sustain the judgment. We think the motion sufficiently presented to the trial court the questions discussed on this appeal.

The mortgage in question was executed in 1888. At that time the statute declaring that the owner or occupant of a homestead might voluntarily sell, mortgage or otherwise dispose of, or incumber the same, provided: "That every such sale, mortgage, disposal or incumbrance shall be absolutely void, unless the wife of the owner or occupant of such homestead, if he have any, shall, separate and apart from her said husband, freely and voluntarily sign and acknowledge the instrument of writing, conveying, mortgaging, disposing of or incumbering such homestead, and the officer taking her acknowledgment shall fully apprise her of her right and the effect of signing and acknowledging such instrument." (R. S. 1887, Sec. 2784.)

The certificate of acknowledgment annexed to the mortgage stated that the grantors, naming them, being personally known to the officer as the persons whose names are subscribed to the instrument, appeared before him in person and acknowledged "that they signed, sealed and delivered the said instrument of writing as their free and voluntary act for the uses and purposes therein set forth." It also contained the following: "And the said Agnes D. Smith, wife of the said John R. Smith, being by me examined in reference thereto, and having had the nature and effect of said instrument explained to her by me, and she being by me fully apprised of her right, and the effects of signing such mortgage, acknowledged that she freely and voluntarily signed and acknowledged the same." The mortgage contained a clause releasing the homestead on the part of the wife, Agnes D. Smith.

It is very clearly established by the testimony that whatever Mrs. Smith did toward the execution of the instrument was done while separate and apart from her husband. The notary who certified to the acknowledgment testified that it was taken when she was separate and apart from her husband; and it is evident, not only from his testimony, but from that of both Mr. and Mrs. Smith, that the former was not present when his wife signed and acknowledged the mortgage. Indeed, it is not claimed otherwise. There was no pretense on the trial, according to the record, that Mrs. Smith's signature was obtained or her acknowledgment taken in her husband's presence. No claim was then made, nor is it now contended, that she executed the mortgage by reason of coercion or undue influence on the part of her husband. The certificate of acknowledgment failing to show that Mrs. Smith executed the mortgage separate and apart from her husband, the notary was examined as a witness to establish that fact. The certificate itself, however, shows substantially that the other requirements of the statute concerning the release by deed or mortgage of a homestead by a wife were complied with. It states that she had the nature and effect of the instrument explained to her by the officer, and that he fully apprised her of her right, and the effect of signing the mortgage, and that she acknowledged that she freely and voluntarily signed and acknowledged the same.

The answer filed by defendant in error denied that she had ever conveyed or released her homestead interest in the premises, and alleged that the certificate of acknowledgment was false and unauthorized. That the issue presented may be clearly understood, it might be added that there was no allegation in the answer that defendant in error had been induced by fraud to sign and acknowledge the mortgage, or that she did so by reason of coercion or undue influence. The effect of her answer is that she had neither signed nor acknowledged the instrument. The theory of the defense, as shown by the evidence, was that, although

she appended her signature to the mortgage, she was not aware of its nature, and did not understand it to be a mortgage.

The attempted impeachment of the certificate of the notary depends altogether upon the testimony of Mrs. Smith herself. She testified that she resided on the homestead known as the John R. Smith ranch, a portion of the land in controversy in this suit, and knew John B. Menardi (the notary); that she recalled the circumstances of his being at her house at the time when it was claimed she had signed and acknowledged the mortgage. She was then asked whether he had at that time read anything to her or not, to which she replied: "No, sir." She also denied a statement made on the witness stand by the notary, that she nodded her head or said yes when, as claimed, she acknowledged the instrument. At first she stated that she did not at the time know on what business Mr. Menardi had come to the house; but qualified that answer by saying she was not positive as to his business there.

She admitted having signed a paper on the occasion referred to; in fact, she stated that she signed two papers; and it seems probable that there were two mortgages, but one only being in controversy here. She further testified that the notary did not refer to a mortgage, and did not tell her at the time that the paper she was asked to sign was a mortgage. She says: "He handed them to me folded, in this direction. There were two papers. He said: 'Put your name to that.' It was very late Saturday night and I was very tired and nervous. He said: 'Sign your name to that,' and I did. It was past the legal hour Saturday night." Being asked if she knew she was signing a mortgage, she answered: "I did not, positively I did not." She then admitted that she did not ask any questions as to the papers she was signing, but stated: "I signed the paper for my own benefit. He said it would be of advantage to me." This occurred on cross-examination, which, being continued, she was asked the following questions: "You

were talking with Mr. Menardi about signing the mortgage before that, were you not?" She replied: "He asked me to sign a paper, and I said I would never sign a mortgage." Her examination then proceeded as follows: Question: "You were talking about the mortgage, were you not?" Answer: "He did not refer to a mortgage at all." Question: "Nothing said about a mortgage?" Answer: "No, sir." Question: "Any of the time you were talking to him?" Answer: "No, sir." Question: "What did he say this paper was?" Answer: "He did not tell me." Question: "You simply signed a paper that you did not know what it was, and did not ask any questions about it?" Answer: "I did what he told me." Question: "So as long as it was not a mortgage, you were satisfied to sign it?" Answer: "I signed it under those circumstances, not thinking that I was signing a mortgage."

On re-direct, she testified that at the time the notary was talking to her about signing the paper, she told him she would not have any of her land conveyed, and the land should not be incumbered; that Mr. Smith had horses and cattle enough to pay his debts.

It will be observed that the sole effect of the testimony of Mrs. Smith is to challenge the statements in the certificate of the notary that the contents of the instrument were made known to her, that she was apprised of her rights in the premises, and that the effect of signing and acknowledging the paper was explained to her. There seems to have been no effort on her part to show that the paper was signed by her involuntarily, except so far as her denial of any knowledge of its character may have that effect.

Opposed to her testimony is that of the officer who took the acknowledgment; and we think also that the testimony of Mr. Smith, in effect, tends to controvert the claim of ignorance of the nature and contents of the instrument on the part of his wife. In addition to the statements in the certificate of acknowledgment, Mr. Menardi testified that he read the mortgage to Mrs. Smith, and read the acknowl-

edgment to her; and that at the time the mortgage was
signed she did not state that she would not sign any paper
conveying any land, or her interest in any land. But he
testifies that the paper was signed about ten o'clock in the
evening, and that about two hours before that she had re-
fused to sign the mortgage; her principal objection being
to releasing her homestead right. He testified that he went
to the ranch at the request of Mr. Smith for the purpose of
taking the acknowledgment of the mortgage, which was to
be given as security for a loan Mr. Smith wished very
much to make. That Smith had informed him his wife re-
fused to sign a mortgage, but did not state to him her
reasons; and he, Smith, could not talk satisfactorily to his
wife, and begged him, Menardi, to go down and explain
the situation to her, which he testified he did. He says that
early in the evening, immediately after supper, Mrs. Smith
said she would not sign any paper conveying any of her
interest in any lands; but that she did not so state when
the acknowledgment was taken. He says that he told her
that her homestead was included; and that she was not
induced to change her mind by any reference to the con-
tents of the paper, but out of consideration for the benefit
it would be to her husband and herself; and after she con-
cluded to sign, she was willing that the homestead be in-
cluded. The witness, referring to the circumstances more
in detail, testified that after supper he remained to see Mrs.
Smith about signing the mortgage, and she then stated that
she would not sign; that they had talked it over before he
came down; that he then left the house, and met Mr. Smith,
and informed him that his wife had refused to sign the
mortgage, and was positive about it. He told Smith he had
explained the situation as he had been requested by him to
do; that Smith replied "it was terrible," or something to
that effect, "to be situated in that way that his wife would
not help him in his affairs;" that after Mrs. Smith was
through with her work he went back to the house to see
her. And it is clear that after he went back, as he testifies,

the paper was signed.   The effect of the testimony of Mr. Menardi is to clearly show that Mrs. Smith thoroughly knew what she was doing, and understood that she was signing a mortgage including and releasing her homestead.   It should be stated, as explanatory of some things already referred to as appearing in the testimony, that Mr. Smith desired to borrow money with which to pay some debts.   This explains what Mrs. Smith meant when she told Mr. Menardi, as she testifies, that her husband had horses and cattle enough to pay his debts.

Mr. Smith was examined as a witness on behalf of defendant, and he testified as follows:   "He (Menardi) came there to my house to get my wife to sign the mortgage. We had a talk in the kitchen.   It was getting late in the evening.   Mrs. Smith positively refused to sign any mortgage on any real estate property.   I left the house and went to feed the horses.   When I came back to the gate in front of the house I met Mr. Menardi there.   He told me that she would not sign the paper.   I said, 'Very well, the deal is off.'   Then he said, 'Hold on, I will go back into the house; I will fix her.'   What was done and said after that, I know nothing about."

Mr. Menardi, being called in rebuttal, admitted that Smith had said something to the effect that the deal was off when informed that the witness had not succeeded in securing the signature of Mrs. Smith, but he denied that he had said to Smith that he would "fix her," or anything to that effect.

It thus appears from the testimony of both Menardi and Smith, that the matter of giving the mortgage was talked about in the presence of Mrs. Smith, and that she, at first, refused to execute any mortgage.   It is, therefore, quite impossible to escape the conclusion that Mrs. Smith knew that her signature was desired to a mortgage.

She does not pretend that the paper she signed later during the same evening was represented to her as anything other than a mortgage;  and it is difficult to conceive what

Mrs. Smith thought the paper was, if she did not understand it to be a mortgage, about which they had been talking, and which she had refused to sign.   We have studied the testimony with much care to ascertain whether she had been induced to alter her resolution, or to sign the document by any false statements or improper representations; but nothing of the kind is to be discovered in the entire record.   She says that Menardi represented that it would be a benefit to her; but how he explained that it would amount to a benefit, she does not disclose.

It appears that, in a way, the officer taking the acknowledgment was connetced with the transaction of the loan to be secured by executing the mortgage.   The application for the loan was made to him, but he testifies that he was not employed by or under the pay of the party from whom the loan was obtained; but that his services in making the loan were to be paid for, and were paid for by Mr. Smith. It seems that Mr. Menardi took applications for loans, and then secured the money to cover them from other parties. He was not otherwise interested in the transaction; and the trial court did not find that he was an interested person, and therefore disqualified from acting officially in taking the acknowledgment.   Mr. Menardi, in fact, testified that it made no difference to him whether the papers were signed or not, as he had so many applications for loans that he could not get enough money to fill them; and that he had sent plenty of good applications to the mortgagee named in the instrument that could be substituted if the Smith papers were not signed.

In view, however, of the situation of Mr. Menardi in relation to the transaction, we have exercised greater care, if possible, to discern any evidence of undue influence upon Mrs. Smith, or concealment from her of the character and effect of the paper.   She may have been prevailed upon against her own judgment to join in the execution of the mortgage; but that is not sufficient to avoid it, in the absence of concealment, misrepresentation or fraud; there

being no pretense of coercion, or that her signing was caused through fear. The learned District Court found that the certificate of acknowledgment was false in that Mrs. Smith did not freely and voluntarily sign and acknowledge the mortgage, and did not acknowledge that she freely and voluntarily signed and acknowledged the same. And, upon that finding, the mortgage was held void as to the homestead. The learned judge must have based his conclusion upon the theory that Mrs. Smith did not understand that she was signing a mortgage, and upon that theory alone, since the testimony does not disclose any other ground. That theory is supported by the evidence of Mrs. Smith; but is opposed by the testimony of the officer who took the acknowledgment, and, inferentially, at least, we think, by the testimony of Mr. Smith.

If this was an ordinary case of conflicting evidence, we might refuse to disturb the judgment, but it is not such a case. There are certain well settled principles to be observed where it is sought to impeach a certificate of acknowledgment.

It is contended by counsel for defendant in error that a certificate of acknowledgment should be regarded as conclusive, in the absence of fraud or duress; and it is argued that the provision of the statute (Sec. 2602) requiring the certificate of a notary, over his hand and official seal, to be received as presumptive evidence of the facts therein contained in all courts of the State, and permitting the same to be contradicted by any person interested as a party to a suit, is not applicable to certificates of acknowledgment, for the reason that the section is found in the chapter relating to notaries public; and that there is no similar provision affecting the certificates of other officers authorized by law to take acknowledgments. It is, therefore, insisted that, under a proper construction of the section, its effect should be limited to notarial certificates other than certificates of acknowledgment. This presents an important question, but we think its determination unnecessary in this case, for the

reason that if it be assumed that the section referred to covers certificates of acknowledgment, we regard the evidence as insufficient to support the finding and judgment of the court in respect to the acknowledgment.

It is a well settled rule, as well in those states where such a certificate is held or declared to be *prima facie* evidence only, as where it is held conclusive, in the absence of fraud or duress, that to impeach the certificate the evidence must be cogent, clear and convincing. (1 Devlin on Deeds, Sec. 531.) In Wisconsin it is said that the evidence must be perfectly clear, convincing and satisfactory. In the American and English Encyclopedia of Law the rule is stated to be that the evidence to impeach the certificate must be clear and convincing beyond a reasonable doubt. (1 Ency. L., 560.) And in Cyclopedia of Law and Procedure, that the proof to overthrow a certificate regular on its face must be so clear, strong and convincing as to exclude every reasonable doubt as to the falsity of the certificate. (1 Cyc., 623.) And many cases are cited in support of the text in both of those works.

The burden of proof rests upon the party assailing the certificate, since a strong presumption exists in favor of its truth. The certificate itself is entitled to some consideration, where it is regular on its face. It is quite generally held that the unsupported testimony of the grantor is not sufficient to overcome a certificate regular on its face, especially where the certificate is supported by the testimony of the officer who took the acknowledgment, or by other competent evidence. (1 Cyc., 623; 1 Ency. L., 561; Smith v. Allis, 52 Wis., 337.)

The rule that the evidence to overcome a certificate of acknowledgment to a conveyance of real estate must be clear, convincing and satisfactory, is so elementary that we do not regard further citation of authorities necessary upon that proposition. It is a highly salutary rule, and founded upon most satisfactory reasons. The security of land titles would rest upon a very unstable basis were the rule otherwise.

We are not prepared to say that in every possible case the unsupported testimony of the grantor will be insufficient to impeach a certificate of acknowledgment. But, as a general rule, such testimony should be supported either directly by testimony corroborative of the grantor's assertions, or by evidence of facts and circumstances that render the grantor's testimony very probable; and in connection with clear and consistent statements of the grantor make the proof of the falsity of the certificate satisfactory and convincing.

In the case of Davis v. Kelly, 62 Neb., 642, a wife denied at first that she had signed the mortgage in question, and afterwards that she signed it knowingly. The court held that her evidence, which was characterized by some evasion and equivocation, was not sufficient to impeach the certificate of acknowledgment; and it was said: "Where there is such a certificate in proper form, it may be impeached only by clear and convincing evidence of its falsity."

In Young v. Duvall, 109 U. S., 573, the court said that if the certificate "can be contradicted, to the injury of those who in good faith have acted upon it, the proof to that end must be such as will clearly and fully show the certificate to be false or fraudulent. The mischiefs that would ensue from a different rule could not well be overstated. The cases of hardship upon married women that might occur under the operation of such a rule are of less consequence than the general insecurity of titles to real estate, which would inevitably follow from one less rigorous."

The certificate is entitled to a presumption that the officer performed his duty; and that the defendant did, as certified, voluntarily acknowledge the execution of the mortgage, which implies that she understood the instrument and the effect of her signing and acknowledging the same. Indeed, the certificate states on its face that the instrument was made known to her, and the effect of its execution explained to her by the officer. The facts certified to are supported by the testimony of the officer. Several years had elapsed, without any attempt, to far as the record

discloses, to have the mortgage vacated. It was foreclosed by advertisement, and while the fact is not shown, it may not be unreasonable to infer that the defendant knew of those proceedings. Her testimony was in some respects evasive. We think it reasonably clear that the matter of her signing a mortgage had been the subject of a conversation between herself, her husband and the notary, or at any rate between the notary and herself at an earlier hour in the evening. It seems hardly probable that she would have refused to sign a mortgage, or announced an unwillingness to do so, if there had been no intimation to her that such action on her part was desired. Her explanation of the reason that she signed the instrument afterwards, viz., because the notary said it would be a benefit to her and her husband, without any knowledge on her part, as she asserts, of the nature of the paper, is far from satisfactory, taking into consideration the character of the evidence required to impeach a certificate of acknowledgment. We regret that we are constrained to disagree with the learned District Judge who determined the case below as to the force and effect of the testimony; but it seems to us that the principle underlying such cases must have been inadvertently disregarded. To our mind the evidence is not sufficiently clear and convincing to overthrow the certificate of the officer.

We have not considered the proposition contended for, that, as against a *bona fide* purchaser or mortgagee, who is not a party to the instrument, and who has paid his money relying upon the record of a certificate of acknowledgment of a deed or instrument duly signed and delivered affecting title to real estate, the grantor is conclusively estopped from denying the existence of the facts set out in the certificate. The great weight of authority is said in Linton v. National Life Insurance Company, 104 Fed., 584, 590, to establish that proposition as a just and equitable rule. It is true that the evidence shows that the plaintiff in error bought the note from the payee and mort-

gagee, without taking a written assignment of the mort-
gage; and that, although the original mortgagee foreclosed
the mortgage in his own name and upon purchasing the
property at the sale, deeded it to the plaintiff in error, the
foreclosure proceedings were conducted for the latter's
benefit. But we prefer not to consider whether the rule
just stated is applicable to one who never saw the mortgage
or the record thereof. In our judgment the evidence is
insufficient to impeach the certificate as against the mort-
gagee named in the instrument; and a consideration, there-
fore, of the other proposition is not required.

It is, however, contended on behalf of defendant in error
that the certificate in question is defective on its face and,
therefore, void, for the reason that it fails to state that the
wife was examined "separate and apart from her husband."
We have already adverted to the evidence upon this subject
and shown that the proof clearly establishes that the in-
strument was signed and acknowledged by Mrs. Smith
while separate and apart from her husband. But the con-
tention is that this must appear from the certificate itself.

Our statutes do not expressly require that the certificate
of a wife's acknowledgment of the conveyance of the home-
stead shall embrace a statement that her examination oc-
curred separate and apart from her husband. It is required
that she shall sign and acknowledge such an instrument
while separate and apart from her husband, but the statute,
as it existed when the mortgage in controversy was ex-
ecuted, was silent respecting the specific contents of the
certificate. The only statutory provision at that time with
reference to the matter is found in the section now known
as Section 2741 of the Revision of 1899. That section cov-
ers all deeds, mortgages and conveyances of lands, and it
is provided only, as to certificates of acknowledgment, that
"the officer taking such acknowledgment shall endorse
thereon (the instrument) a certificate of the acknowledg-
ment thereof, and the true date of making the same, under
his hand and seal of office, if there be one."

It is certainly a very proper and desirable proceeding, where the law requires the examination of the wife to be separate and apart from her husband, for the officer to state in his certificate that the examination was so made; and we are of the opinion that such has been the general custom in several, if not most, of the counties of the State; although counsel for plaintiff in error seem to think that the general usage has been otherwise. It is probable that in some portions of the State it has not been customary for certificates of acknowledgment to show upon their face the fact of the separate examination of the wife; and that we should consider that situation in a decision of this question. Land titles should not be thrown into confusion and uncertainty by a construction of the statutes that will have the effect to disturb the security of titles, unless such a construction should be clearly required.

We think it safe to say that in many of the states, and doubtless a considerable majority of them, it is held necessary that the certificate show that the acknowledgment of a married woman was taken upon an examination separate and apart from her husbnd, where such acknowledgment is required to be so taken; but, generally, at least, that is so held, for the reason that the statute, either expressly or by very clear implication, provides that the officer shall certify to the fact of such examination. In a number of states specific provision is made by statute for the requisite contents of the certificate. Our statute, as it existed prior to 1895, seems to have followed the older statutes of some other states, in merely requiring the officer to certify the fact of the acknowledgment, or, as the statute expresses it, "to endorse thereon a certificate of the acknowledgment thereof."

Under a statute in Pennsylvania making no more definite a regulation than that, the courts of that state held that the statutory requisites for the execution of conveyances by *femes covert* must appear to have been substantially complied with on the face of the certificate, and that the failure

of the certificate to show that the *feme covert* was examined separate and apart rendered the deed void, parol evidence to supply the defect being held inadmissible. (Watson v. Bailey, 1 Bin., 470; 2 Am. Dec., 462; Jourdan v. Jourdan, 9 S. & R., 268; 11 Am. Dec., 724.)

But in the states of Ohio, Indiana and Illinois, under substantially similar statutes, a contrary conclusion was adopted. The statute of Indiana provided that when a husband and wife should incline to convey the estate of the wife, it should be lawful for them to appear before one of the judges, etc., who were authorized and required to take the acknowledgments; in doing which the officer was required to examine the wife separate and apart from her husband, and to read or otherwise make known to her the full contents of the deed; and if, upon such separate examination, the wife should declare that she did voluntarily and of her own free will and accord, and as her act and deed, seal and deliver the conveyance without any coercion or compulsion from her husband, then every such deed or conveyance was declared to be good and valid in law, "provided that the judge, justice, or recorder taking the same, shall, under his hand and seal, certify the same upon the back of such deed or conveyance." In the case of Stephens v. Doe, 6 Blackf., 475, the opinion being delivered by Judge Blackford, it was said: "The officer must, under his hand and seal, and on the deed, certify the *same;* that is, he must certify on the deed that such declaration or acknowledgment of the voluntary execution of the deed was made before him. But the statute does not require, as we understand it, the certificate to show anything more on the subject than the declaration or acknowledgment of the wife that she had voluntarily executed the deed. It will be presumed, the contrary not appearing, that the officer did his duty as to the separate examination of the wife, and the making her acquainted with the contents of the deed. It *is the acknowledgment only, not the circumstances under* which it was made, that is required to be certified."

The statute of Illinois·was the same as that of Indiana; and the same construction was placed upon it by the court of the former state. (Hughes v. Lane, 11 Ill., 123; Coleman v. Billings, 89 Ill., 183.) In the case first cited, the court referred to the Indiana decision·in Stephens v. Doe, *supra;* and also cited as to the same effect the case of Nantz·v. Bailey, 3 Dana (Ky.), 111. In the case of Coleman v. Billings, it was held that it was·not required that the certificate recite the fact of separate examination, and making known to the wife the contents of the conveyance.

The question was very thoroughly.considered in two cases in Ohio in respect to several deeds assailed for defects in the certificates of acknowledgment—Chestnut v. Shane's Lessee, 16 O., 599, where it was held unnecessary for·the certificate to show that the officer made known to the wife the contents of the deed by reading or otherwise; Ruffner v. McLennan et al., and three other cases reported in the same volume, 16 O., 639. In one of the cases the alleged defect was that the certificate did not show a separate examination. It was held good. The court said: "It may, at least, be presumed in favor of the officer that he would not make such certificate until he had done and performed all that the statute required of him to do and perform." Construing the statute as requiring only the acknowledgment to be certified, and not the facts as to examination, etc., it was said by the learned judge who delivered the opinion: "And shall this court say that a certificate thus conformable to the statute furnishes no evidence that the statute has been complied with? It seems to me not."

In the Ohio cases the court' recognized that there were very many cases throughout the state in which the officers had omitted to certify to one or the other of the things they were commanded to do in taking the acknowledgments of married women. The general security of titles to real estate entered largely into the reasoning of the court. The question had attracted unusual attention in that state and the members of the profession were` divided in opinion.

One of the justices dissented and with much force expressed his views.

It may be confessed that much is capable of being said in support of the proposition that to certify to the acknowledgment of the execution of a deed includes by reasonable, if not by necessary, inference a certification of the acts requisite to be done in taking the acknowledgment; and that as no deed of a hometsead is valid unless the acknowledgment is taken under certain specified conditions, that the officer ought to show in his certificate the facts which will disclose a strict compliance with the statutory conditions. But in view of the decisions above referred to, and of the absence of a clear expression of the statute requiring the certificate to contain a statement showing the fact of separate examination, the officer having certified that the wife did acknowledge that she freely and voluntarily signed and acknowledged the instrument, we feel constrained to adopt that conclusion, which has been sanctioned by such excellent authority, will better secure titles to real estate in our commonwealth, and at the same time work but slight, if any, hardship upon grantors of homesteads. The instances where in fact no separate examination has occurred are doubtless few in number; and in such cases it is open to the parties to establish non-compliance with the law. Where a certificate contains no reference to such an examination, it would appear impossible, in that respect, to apply to it any rule of conclusiveness.

Moreover, we are the more readily induced to adopt this conclusion upon consideration of later legislation upon the subject. In 1895 a certain form of certificate of acknowledgment set out in the statute was declared to be sufficient. (L. 1895, Ch. 93, Sec. 5; R. S., Secs. 2752, 2770.) That form embraces no statement respecting separate examination, although it refers to the acknowledgment of a wife, and in one paragraph of the section reference is made to the conveyance of a homestead, and certain facts in such a case are required to be stated in the certificate, viz., the words,

"including the release and waiver of the right of homestead," or other words which will expressly show an intention to release the right of homestead.

We do not allude to that statute upon the ground that it is to be regarded either as retroactive or as a legislative construction of former laws.   But it is declarative of legislative policy for the future.   We should ordinarily hesitate to express an opinion as to the effect of a statute which does not control a decision of the case in hand; but as the Legislature is again soon to convene, and can correct any possible defect in the law, we anticipate no harm from a reference to the act of 1895, and to say that it seems to add nothing to previous statutes in relation to the necessity of incorporating in a certificate of acknowledgment a statement of the fact of separate examination.   If it should be deemed to cover the case of an instrument affecting the homestead interest, and upon that question we refrain from expressing an unreserved opinion, it would at least create a doubt as to the absolute necessity of an officer setting out in his certificate that the acknowledgment of the wife was taken separate and apart from her husband, in order to constitute a valid certificate.

In so far as the judgment adjudged the defendant in error to be entitled to the possession of the homestead premises, it was erroneous, and to that extent it will be reversed, and the case remanded for new trial in respect to the premises embraced in the homestead.                          *Reversed.*

CORN, C. J., and KNIGHT, J., concur.