ROWRAY v. ATLAS REALTY COMPANY

(No. 1844; May 14, 1935; 45 Pac. (2d) 18)

For the plaintiff in error there was a brief by *S. E. Phelps, Philip E. Winter* and *E. Paul Bacheller,* all of Casper, and oral argument by *Mr. Phelps.*

For the defendant in error, there was a brief and oral argument by *R. N. Ogden,* of Casper.

RINER, Justice.

This case is closely akin to Case No. 1896, both in its controlling facts and the law applicable. It is an equitable action in effect to cancel a certain mortgage and deed and was commenced in the district court of Natrona County by D. L. Shipp, as plaintiff, against the Atlas Realty Company, a Wyoming corporation, as defendant. The parties will hereinafter be usually referred to as "plaintiff" and "defendant," except as convenience may dictate the use of their respective names. The plaintiff's name appears in the record as "D. L. Shipp" or as "Dickie L. Shipp." Since the cause was lodged here and brief filed in her behalf she died, and by order of December 18, 1934, made pursuant to consent of all the parties, Oline Rowray, Executrix

and Sole Legatee and Devisee of D. L. Shipp, deceased, was substituted as plaintiff in error. The defendant had judgment rendered in its favor upon the conclusion of the trial below, and these proceedings in error were in due course instituted.

The facts necessary to be recited so that the nature of the case may be fairly understood are substantially these: On November 21, 1912, the plaintiff and her husband, E. Richard Shipp, who was an attorney at law, were residents of Casper, Wyoming, and plaintiff was the owner of Lot 5 in Block 70 therein, and also of the Southeast Quarter of the Northeast Quarter, the North Half of the Southeast Quarter and the Northeast Quarter of the Southwest Quarter in Section 15, Township 33 North, Range 79 West of the 6th P. M. Relative to the acquisition of the aforesaid property plaintiff testified on the trial in response to the question, "Did you use your own separate money?" "No, sir, I don't know as I did; I used part of it." She also stated that "I think Mr. Shipp paid part of it; we usually worked in harmony." Concerning the acreage property described above, it appears that plaintiff's husband had previously taken up a homestead claim and also an additional homestead under federal law, upon which they resided for five years, and her husband then deeded all that property to her. The acreage aforesaid comprised the additional homestead entry.

On the date mentioned in the preceding paragraph a $2000.00 loan, with interest at ten per cent per annum, was obtained from Mr. C. H. Townsend, also a resident of Casper, for the purpose of erecting a dwelling house upon the lot property above described. This building cost approximately $4500.00. The Shipps procured the additional money required from other sources. To secure this loan a mortgage was given upon said lot property. The instrument was dated November 21, 1912, reciting that it was given by D. L. Shipp and E.

Richard Shipp to C. H. Townsend. The names of the husband and wife were attached thereto and a notarial acknowledgment was affixed by M. P. Wheeler, certifying the fact of their being known to him, their personal appearance before him, their acknowledgment of voluntarily signing, sealing and delivering the instrument and expressly waiving homestead exemption rights. The mortgage was placed of record in Natrona County on the day of its date. Speaking of this loan from Mr. Townsend, plaintiff testifying on cross-examination said that "it was an indebtedness that I recognized."

On December 20, 1915, another mortgage was recorded, reciting that it was given by the Shipps to Townsend, this instrument being dated December 18, 1915, being to secure the payment of $2600.00 and covering said lot property. The names of the mortgagors were affixed to the instrument, and M. P. Wheeler as United States Commissioner of Deeds certified that he took their acknowledgment to said instrument in form as described above when acting as Notary Public. The same day this second mortgage was recorded the first one was released by the mortgagee.

Mr. Wheeler as a witness for defendant testified that he remembered taking one acknowledgment of Mr. and Mrs. Shipp to a mortgage when both were present, and gave certain details why he recalled the occasion. He also stated that he never took any acknowledgments when the person acknowledging was not present, it not being his custom to do so.

February 3, 1917, a third mortgage was recorded, dated the 1st of that month, with the same mortgagors and mortgagee named therein, upon the same property, and being to secure the payment of the sum of $2800.00. Geo. W. Ferguson as Notary Public certified that he took the acknowledgment of the mortgagors to this instrument, the form used being similar to that

employed by Mr. Wheeler, with the additional certification that the nature and effect of the instrument was explained to D. L. Shipp by said Notary Ferguson and that she was fully apprised of her right and of the effect of signing and acknowledging said instrument. The day this mortgage was recorded that dated December 18, 1915, was released by the mortgagee.

In the summer of 1919, as plaintiff relates in her testimony, another house was erected on the lot property aforesaid, costing a little less than $4500.00, which was used for rental purposes by plaintiff and her husband. She said also that they had approximately $1800.00 of their own money to use in putting up the house, and that her husband told her the additional money necessary was received from Mr. Townsend. At this time Mr. C. H. Townsend was president and principal stockholder in both the Stockmen's National Bank of Casper and the First Trust & Savings Bank of that city, both corporations using the same banking rooms.

August 16, 1919, a fourth mortgage was recorded, dated the 15th day of that month, the mortgagors therein being the plaintiff and her husband and the mortgagee the First Trust & Savings Bank, upon said lot property, and being to secure the payment of the sum of $6000.00, for three years after date, with interest at eight per cent per annum, payable semi-annually. Geo. W. Ferguson as Notary Public certified that he took the acknowledgment of the mortgagors to this instrument, the form of said acknowledgment being the same as that employed by him on the mortgage of February 1, 1917, aforesaid. On the day the mortgage dated August 15, 1919, was recorded, Mr. Townsend, as mortgagee, released the one dated February 1, 1917.

May 21, 1923, a fifth mortgage was placed of record, dated the 18th of that month, upon said lot property, with the mortgagors and mortgagee named as in the

instrument dated August 15, 1919, described above, and being to secure the sum of $7000.00, for two years after date, with interest at eight per cent per annum, payable semi-annually. Geo. W. Ferguson as Notary certified that he took the acknowledgment of the mortgagors to this document, the form of said acknowledgment being substantially similar to those previously used by him and already described. On the day this mortgage was recorded, that of date August 15, 1919, was released by W. O. Ratcliff, attorney-in-fact for the First Trust & Savings Bank.

June 12, 1925, a sixth mortgage was recorded, dated May 18 of the month preceding, with the same mortgagors and mortgagee named as in the instrument last described, upon the lot property aforesaid, and also upon the acreage property referred to above, and being to secure the payment of $8000.00, for two years after date, with interest at eight per cent per annum, payable semi-annually. The same Notary as appeared on the last instrument certified to the acknowledgment of the mortgagors, in the form already indicated as used by him. The day this mortgage was recorded that dated May 18, 1923, was released by W. O. Ratcliff as attorney-in-fact for the mortgagee.

Just preceding the recording of this last mentioned mortgage and under date of June 9, 1925, by an instrument signed by plaintiff's husband and having her name written above his, the acknowledgment thereof stating that they personally appeared before Geo. W. Ferguson as Notary and freely executed said instrument, the rents of the lot property were assigned to the First Trust & Savings bank, aforesaid, "during such time as the mortgage indebtedness of $8000.00, or any part thereof, held by it upon said real estate shall remain unpaid." The instrument also recited that the assignment was given as security for the payment of this indebtedness additional to the mortgage upon

the mortgagors' real estate aforesaid. Pursuant to this arrangement the rentals upon this property were paid to the First Trust & Savings Bank and to the defendant until the death of plaintiff's husband.

October 3, 1927, a seventh mortgage was placed of record, dated the 1st of that month, naming the same parties as mortgagors and mortgagee as in that of May 18, 1925, upon the same property and also to secure the same principal sum and interest for one year. When this mortgage was recorded that dated May 18, 1925, was released by C. H. Townsend as attorney-in-fact for the mortgagee.

There is testimony in the record which indicates that the foregoing recited mortgages were renewals for the original one given in 1912 to Mr. C. H. Townsend, the interest and advancements being added to the debt as the years passed, and the earlier liens duly released as the new instruments were given and recorded. There is no contention in this case that the ultimate amount, the payment of which is purported to be secured by the last mortgage given, is not accurate. In this connection it may be observed that the Notary Ferguson testified that he never as such officer took the acknowledgment of a wife to a mortgage without explaining to her the purpose, and never penned his name to a certificate of acknowledgment to a mortgage when the wife was not before him personally.

About February 11, 1928, Mr. C. H. Townsend appears to have withdrawn from the business of banking and the Atlas Realty Company, defendant herein, was formed to take over certain property previously owned by the two banks aforesaid. Townsend became president of this company. By an assignment dated September 13, 1929, and recorded October 2, 1929, the First Trust & Savings Bank transferred to the defendant the seventh mortgage aforesaid and the indebted-

ness it undertook to secure. On December 13, 1929, the defendant paid said bank as the consideration for this instrument the sum of $8,281.92.

On July 17, 1930, there was placed of record in the County Clerk's office of Natrona County a warranty deed, dated the 7th of that month, naming D. L. Shipp and E. Richard Shipp, her husband, as grantors and the defendant as grantee, and purporting to convey to the latter both the lot and the acreage property mortgaged as above detailed. This instrument contained the following statement relative to the premises involved:

"And that they are free from all encumbrances whatsoever, excepting mortgage from said parties of the first part to First Trust & Savings Bank, a corporation, assigned to said party of the second part conveying the above described premises, dated October 1st, 1927, recorded October 3rd, 1927, in the office of the County Clerk of Natrona County, Wyoming, and there recorded in Book 50 of Mortgages on Page 17, which said mortgage is hereby merged in these presents, part of the consideration for this deed being waiver of all claim of deficiency against said parties of the first part by party of the second part on account of the debt secured by said mortgage, which is hereby satisfied and cancelled."

The deed was signed by plaintiff's husband, and above his signature appears her name written by him, as the testimony in the case would seem to indicate. The Notary, John J. Hancock, who took the acknowledgment of the grantors, affixed his name as witness to the instrument, and his certificate of acknowledgment states:

"On this 11th day of July, A. D. 1930, before me personally appeared D. L. Shipp and E. Richard Shipp, her husband, to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed, including the release and waiver of the right of homestead, the said wife having been by

me fully apprised of her right and of the effect of signing and acknowledging the said instrument.

"Given under my hand and Notarial seal this 11th day of July, A. D. 1930."

Plaintiff's husband died April 29, 1932, and May 24, 1932, she brought this suit to cancel the warranty deed aforesaid and the mortgage, the secured debt of which it undertook to extinguish, and to require the defendant to account for the "money or advantage received or to be received through" said instruments. She alleged that she never signed or acknowledged either instrument and asserted their invalidity as to her. She made no offer to reimburse the defendant for its expenditures in the matter. Defendant by its answer negatived her claim thus made and set forth in detail the history of the accumulated indebtedness, which it asserted the deed settled. The answer also affirmatively charged the execution and acknowledgment of the instruments aforesaid by plaintiff and her husband.

Trial was had to the court without a jury and a judgment was entered that the instruments, whose cancellation plaintiff sought, were valid and subsisting and that she take nothing by her petition. The court made a finding of all the issues in the case in favor of the defendant. Summarizing, the court also found that plaintiff and E. Richard Shipp were husband and wife during the time of the transactions involved; that he acted as her agent in all her business matters and signed her name to many papers, including the instruments in suit; that he attended to all the details surrounding the securing of loans, making the mortgages and deed aforesaid, and received the consideration, a large part of which was applied in erecting improvements on the property and paying general and special taxes thereon; that plaintiff appeared in person before the Notary Hancock and acknowledged the execution of the deed aforesaid; and that by acquiescing in her

husband acting as her agent and acknowledging the signature he wrote on said deed, she adopted it as her own.

Plaintiff assigns as error that the judgment is contrary to law and unsupported by the evidence in the case.

In the course of her testimony given on the trial, as a witness in her own behalf, she stated in addition to what has been above referred to, in substance that she had suffered ill health for many years; that she had no recollection of ever signing any mortgage to Mr. C. H. Townsend or to the First Trust & Savings Bank of Casper; that she would be "almost willing to deny" that she ever signed a mortgage to either of these parties; that she does not remember going before M. P. Wheeler or Geo. Ferguson and acknowledging the instruments with her name appearing thereon; that she had a checking account in one of Mr. Townsend's banks in 1912; that it continued for quite a while, but that she only used it once and never deposited any money in it and that her husband did; that Mr. Shipp attended to matters pertaining to her property, because she wanted him to; that she knew that rentals from property owned by her were deposited in the Townsend banks in her husband's name; that they were put there to pay assessments, taxes and for emergency purposes; that this arrangement was between her husband and herself; that she never told the bank of it, never had any occasion to do so, and she was trusting her husband; that the money was drawn out by Mr. Shipp; that she had it put there because she did not want to attend to it; that the bank account was in the exclusive custody of her husband so far as she knew.

Concerning the warranty deed of July 7, 1930, aforesaid, she testified she never signed or acknowledged it. Her testimony on the matter was in substance, that

she signed a deed about the 10th or 11th of July, 1930, to three lots she then owned, and that she later destroyed this deed by burning it, the parties having paid only $25.00 and being unable to pay the balance; that the Notary Hancock came out to her home the morning after she signed that deed and started to draw the deed out of his pocket; that she said, "I know all about that, Mr. Hancock," thinking she was signing a deed to the three lots aforesaid; that she did not see the instrument Hancock brought out to her unfolded; that the reason she did not read it was that she thought she had seen it the night before and she was acknowledging the instrument she signed then; that when Hancock came to the house Mr. Shipp and the car driver were with him; that neither Shipp nor Hancock got out of the car.

The Notary Public Hancock, as a witness for the defendant, testified concerning the circumstances of taking plaintiff's acknowledgment substantially, that he received the warranty deed aforesaid from plaintiff's husband on the morning of July 11, 1930; that the certificate of acknowledgment on said deed is true; that plaintiff's husband and one Gallatin, who drove the car, were present when the acknowledgment of Mrs. Shipp was taken to said deed. Questioned on cross-examination, he stated that Gallatin stopped the car a short distance from the back door and sounded the horn; that he (Hancock) got out and Mrs. Shipp came to the back door, where he met her; that he had the deed in his hand at that time; that he told her he had come to get her acknowledgment to this deed; that he asked her if she signed it, and she said, "Yes, I signed it and know all about it and it is all right"; that at that time he had the deed in his hand not folded; that he said, "Then you want me to acknowledge this deed," and she told him she did; that plaintiff's husband had previously informed him that Mrs.

Shipp was sick and nervous and for him not to stay any longer than he had to. On redirect examination this witness testified that there was no impediment in any way of Mrs. Shipp examining the instrument as he offered it to her; that he had the paper open in his hand with the signature displayed where she could see it if she looked at it; that he was within handshaking distance from her at the time; that he did nothing to conceal the signatures from her.

Gallatin as a witness for the defendant stated that he went with Shipp and Hancock to see Mrs. Shipp in July, 1930; that when they arrived at the house Hancock got out of the car and went to the house; that neither he nor Shipp left the car; that he did not hear the conversation between Hancock and Mrs. Shipp.

It is apparent that the testimony relative to the wife's acknowledgment of the warranty deed was substantially conflicting, and consequently the trial court was authorized in weighing the evidence to find for the defendant thereon, as was done.

The principal question of law argued in this case for plaintiff are the same as those appearing in Case No. 1896, Oline Rowray, as Executrix of the Last Will and Testament of Dickie L. Shipp, Deceased, and Sole Legatee and Devisee under the said Last Will and Testament of Dickie L. Shipp, Deceased, Plaintiff in Error, v. Casper Mutual Building and Loan Association, a Corporation, Julion Clawson and Charles Anda, Trustees of said Association, and Evah Herncall, Defendants in Error, (Wyo.) 45 P. (2d) 7, this day decided, and it is unnecessary here to reiterate our views concerning them.

It is urged for the plaintiff that the Notary did not apprise the wife of her rights and the effect of signing and acknowledging the warranty deed aforesaid, as required by the statute. (W. R. S. 97-205.) It is perfectly clear that, taking the Notary's testimony as true

as we are obliged to do under the court's findings, Mrs. Shipp had abundant opportunity to examine the instrument and then decline to acknowledge it if it did not meet with her approval. If she failed to avail herself of that opportunity, saying she knew all about the matter and that it was all right, we do not think it was the duty of the Notary to force her to listen to an explanation of the transaction—especially when her husband had advised the official that she was a sick and nervous woman and that he should not stay longer than was necessary. If Mrs. Shipp was really mistaken in her knowledge of the instrument, it being plain on the record that the defendant was not in the least instrumental in misleading her mind on the subject, that can not avail to secure the cancellation of the deed in question under the circumstances shown on the record before us. It is apparent that she received in large measure the benefit of the loans procured by her husband from Mr. Townsend and his banks.

The contention is also advanced that the plaintiff never authorized the delivery of the warranty deed. The Supreme Court of Ohio in Baldwin v. Snowden, 11 O. St. 203, under a set of facts resembling somewhat those at bar on the point, remarked concerning a similar argument:

"But the respondent further avers that she never delivered, nor authorized her husband to deliver the mortgage deed, upon which suit is brought. She does not deny the fact that it was signed and sealed by her; nor that it was delivered by her husband; and if she is conclusively bound by the certificate of acknowledgment, which shows her knowledge of its contents, and the purpose for which it was intended; and if, with this knowledge, she permitted her husband, without objection or inquiry, to take and use it according to his own judgment, then she has no right to complain that he delivered it in accordance with its terms and manifest purpose. Under such circumstances, a delivery by him must bind her, as well as himself. The

grantee may properly regard her execution and acknowledgment of the instrument as evidence of her consent to its delivery; and if, without notice of her dissent, it is delivered by the husband, she can not afterward be permitted to question his right to do so, without allowing a fraud to be practiced against the grantee. Were it otherwise, a large majority of all the deeds executed by husband and wife, within this State, have never been delivered by the wife, and would not bind her."

We deem it unnecessary to apply this language to the record here as it has been outlined above. Its pertinency and persuasive logic is quite evident.

Our examination of this case accordingly has led us to the conclusion that the judgment of the trial court was proper and it should be affirmed.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.