ROWRAY v. CASPER MUT. BUILDING & LOAN
ASS'N., ET AL.

(No. 1896; May 14, 1935; 45 Pac. (2d) 7)

For plaintiff in error there was a brief by *S. E. Phelps* and *E. E. Enterline,* both of Casper, and oral argument by *Mr. Enterline.*

For the defendant in error, there was a brief by *Hagens and Wehrli* and *Marvin L. Bishop,* all of Casper, and oral argument by *Mr. Wehrli.*

294

RINER, Justice.

This is a proceeding in error brought to review a judgment of the district court of Natrona County, in an action wherein D. L. Shipp, referred to in the record at times as "Dickie L. Shipp," was plaintiff, and Casper Mutual Building and Loan Association, a corporation, Julion Clawson and Charles Anda, Trustees of said Association, and Evah Herncall were defendants. After the judgment was rendered and a motion for a new trial had been overruled, the plaintiff died, and by order the action was revived in the names of the plaintiff in error, Oline Rowray, both as executrix and as the sole beneficiary under plaintiff's will, and

they were made parties thereto. Hereinafter the original litigants in the court below will be generally referred to, "Dickie L. Shipp," "D. L. Shipp," as the "plaintiff," the Casper Mutual Building and Loan Association as the "Association," Julion Clawson and Charles Anda as the "Trustees," and Evah Herncall as the "purchaser," except as it may be more convenient to employ their respective names.

The record discloses substantially the following facts necessary to be considered in disposing of the case here: The Association aforesaid, on May 29, 1925, was a mutual building and loan company authorized to do business under the laws of this state at the city of Casper. At that time also the plaintiff was the owner of certain real estate described as the West Half of Lot 7 in Block 41 in Capitol Hill Addition to the city of Casper. About that date the plaintiff's husband, E. Richard Shipp, delivered to said Association a promissory note payable to its order for the sum of Four Thousand Dollars, due on or before June 25, 1934. This note was signed by the husband and above his name was written his wife's name, "Dickie L. Shipp," the obligation being dated May 27, 1925. Accompanying this note was a mortgage upon the real property mentioned above, and also upon Lot 6 in said Block likewise owned by plaintiff, the instrument being of even date with the note aforesaid, and drawn to secure its payment to the Association. This mortgage was also signed by the husband and above his signature appeared in writing his wife's name, "Dickie L. Shipp." The instrument bore on it the names of two witnesses, one of whom was the notary public, George W. Ferguson, an attorney at law, who signed the acknowledgment appended thereto, which recites that:

"On this 11th day of June, A. D. 1925, before me personally appeared Dickie L. Shipp and E. Richard Shipp, wife and husband, to me known to be the per-

sons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed, including the release and waiver of the right of homestead, the said wife having been by me fully apprised of her right and the effect of signing and acknowledging the said instrument.

"Given under my hand and notarial seal this 11th day of June, A. D. 1925."

These papers were delivered in connection with an application, under date of May 29, 1925, addressed to the board of directors of the Association, for a loan, to be secured by "a mortgage deed upon my property," said property being the real estate aforesaid, and quite full information concerning it being given. The application was signed "D. L. Shipp by E. R. S." It is clearly established in the record that the plaintiff's name was signed to each of the above mentioned instruments by her husband.

The Association, being a mutual company putting out its loans on competitive bidding, it appears that on the loan applied for as above there was a premium of 34% bid, so that the Association was required to pay out in response to the allowed application aforesaid, the sum of $2640.00. Substantial portions of this amount were employed by plaintiff's husband in making payment for twenty shares of stock in the Association issued in the name of Dickie L. Shipp, for accrued taxes and improvement assessments on the piece of real estate hereinbefore described, and on other property owned by plaintiff, for office rent by her husband, for furniture placed in their home, and for other purposes not necessary to detail here.

At the time the mortgage aforesaid was recorded, June 11, 1925, the purchaser and her husband were tenants on the real estate aforesaid and they subsequently were directed by plaintiff's husband to pay the accrued rentals to the Association, which they con-

tinued to do until Mrs. Herncall bought the property. Previous to that time the rent had always been paid to Mr. Shipp. The plaintiff, testifying in her own behalf on the trial of the case, stated that her husband was authorized to pay taxes, assessments and insurance charges on the property, and to collect the rentals thereon.

Under date of February 21, 1930, in connection with a reorganization, the Association made a trust agreement, whereby Julion Clawson and Charles Anda were appointed Trustees to manage its affairs. With a number of others the mortgage aforesaid, together with the note it secured, was, on the date last mentioned, assigned by the Association to said Trustees.

Subsequent to the date of the loan made as stated above and in addition to the moneys paid out pursuant to its requirements, the Association and the Trustees advanced certain sums for repairs, insurance, payment of water bills, taxes, etc., in connection with the real property covered by the mortgage thus assigned. In consequence, on April 14, 1930, there was due on account of the loan aforesaid and the several advancements thus made, the sum of $3611.87, after giving credit for all payments received thereon and the withdrawal value of the twenty shares of stock in the Association. On that date the Trustees obtained from plaintiff's husband a warranty deed to a part of the mortgaged property aforesaid, to-wit, the West one-half of Lot Seven, the consideration therefor being that the Trustees would release the mortgagors from their liability on the mortgage, thus clearing the remaining Lot 6 of its lien. Both said Trustees were named as grantees in said deed.

This conveyance was signed by plaintiff's husband and above his signature appeared the name of plaintiff, "Dickie L. Shipp," written in his handwriting. The instrument was witnessed by the notary public whose

acknowledgment was attached thereto, John J. Hancock, an attorney at law in Casper, the form of said acknowledgment, other than dates, being the same as that hereinbefore recited as affixed to the mortgage aforesaid. The transaction relative to the execution and delivery of the deed as related appears to have been negotiated between the Trustee Clawson and the plaintiff's husband. The deed was recorded May 26, 1930.

Thereafter and on March 17, 1931, the Trustees sold the West Half of Lot 7 aforesaid to Evah Herncall, giving her a warranty deed of that date, for which she paid them as consideration the sum of $734.40 and assumed and subsequently paid the city of Casper special improvement assessments on said property totaling $1265.61. The purchaser continued in possession of these premises and between the date of purchase and June 11, 1932, she also paid general taxes due thereon and expended in cash for improvements on the property the sum of $6131.67. She claims also that her husband's services in making these improvements were worth $1800.00 additional.

Under date of March 20, 1931, the Trustees aforesaid executed and acknowledged a release of the above described mortgage to Mrs. Shipp and her husband and placed it of record on the 27th of that month in the office of the County Clerk of Natrona County, Wyoming.

Plaintiff's husband, E. Richard Shipp, died April 29, 1932.

On June 11, 1932, plaintiff instituted suit in the district court aforesaid, asserting that she was the owner of the property thus disposed of to Evah Herncall. Referring to the papers hereinbefore described on which her name was written by her husband, paragraph 5 of her petition reads as follows:

"Plaintiff alleges that she did not sign any contract, note or obligation, nor did she incur any debt, for which said pretended mortgage was security, and plaintiff further avers that she did not sign, acknowledge or deliver any one of said four instruments referred to in the preceding paragraph, nor did she ever authorize any other person to sign, acknowledge or deliver any of them for her. Neither did she have any knowledge, notice or intimation of the existence of any one of said instruments until one week after the death of her husband on April 29, 1932; that her pretended signature, acknowledgment and delivery of same and of said contract or obligation, were and are not her signature, acknowledgment and delivery, but were each and all the acts of some other person or persons than plaintiff, done without her knowledge or consent, absolutely unauthorized by her and never in any manner ratified by her."

In paragraph numbered 7 of said pleading, among others, the following allegations appear:

"Plaintiff further avers that she has not at any time, or in any manner received any consideration whatever through, under or by reason of any or all of said recorded instruments or said contract, note or obligation above referred to, nor did she ever pay any consideration whatever for the release referred to in paragraph 4(d); that she did not authorize, or know of, either the receipt or payment of the consideration mentioned in any said instruments or the contract or obligation referred to above, by any person or persons on her behalf. That each said defendants knew plaintiff owned said property in her own right and as her separate property and that she had never alienated or encumbered the same."

Plaintiff prayed that the note and mortgage, together with the warranty deed bearing her name written thereon be adjudged to be clouds upon her title to said property; that the deed from the Trustees to the purchaser be cancelled; that the said defendants be required to account to her for the rents and profits of the premises described in said instruments, or any of

them, judgment being asked in that respect against the Association or its Trustees for $3500.00 and against the purchaser for $750.00.

The purchaser, by her separate amended answer, denied generally the above quoted allegations of plaintiff's petition and affirmatively alleged in part:

"That upon said 14th day of April, 1930, the plaintiff and E. Richard Shipp, her husband, made, executed and delivered for valuable consideration, a warranty deed, conveying said premises to Julion Clawson and Charles Anda, Trustees, which said warranty deed was recorded in the office of the County Clerk of Natrona County, Wyoming, May 26th, 1930, in Book 64 of Deeds, page 141; that thereafter and upon the 17th day of March, 1931, the said Julion Clawson and Charles Anda, Trustees, for valuable consideration, made, executed and delivered a warranty deed conveying said premises to this defendant, Evah H. Herncall, which said warranty deed was recorded in the office of the County Clerk of Natrona County, Wyoming, March 25th, 1931, in Book 64 of Deeds, on page 477; that this defendant at all times since said 17th day of March, 1931, has been in the quiet, sole and exclusive possession of the premises hereinabove described and has claimed to own the same, and does own same by virtue of the facts hereinabove recited, and the conveyances hereinbefore described."

The separate answer of the Association and the Trustees also denied "Each and every allegation, matter, and thing contained in" paragraphs 5 and 7 of plaintiff's petition. Among other averments it affirmatively charged:

"That on or about the 27th day of May, 1925, the plaintiff, together with her husband, E. Richard Shipp, for the consideration of the sum of $4,000.00 loaned and advanced to the plaintiff by the defendant Casper Mutual Building and Loan Association, made, executed and delivered to said Association, their promissory note, a true and correct copy of which is hereto attached, marked 'Exhibit A,' and by reference herein made a part hereof.

## V

"That on or about the 27th day of May, 1925, to secure payment of the promissory note hereinabove described, the plaintiff, together with her husband, E. Richard Shipp, made, executed and delivered to the defendant, Casper Mutual Building and Loan Association, their mortgage deed covering and conveying Lot 6 and West half of Lot 7 in Block 41 Capitol Hill Addition to Casper, Natrona County, Wyoming, a true and correct copy of which said mortgage deed is hereto attached, marked 'Exhibit B' and by reference herein made a part hereof."

The Association's answer further alleged among other things in substance, that on April 14, 1930, the plaintiff had defaulted under the terms of the mortgage aforesaid by failing to pay the general county taxes on the above described property before delinquency, by failing to keep the improvements on said premises in repair, in failing to keep the buildings upon the premises insured, and in failing to pay water bills, and that the Association and Trustees had taken care of all these matters, the moneys thus expended being added, with interest, to the mortgage indebtedness. Said answer then stated:

"That upon said 14th day of April, 1930, the plaintiff had made default in the conditions of the mortgage deed in all of the respects hereinabove described, and in addition thereto was in default in the payment of interest upon the loan, and also in the payment of monthly dues upon the stock pledged as security for the loan, and these defendants upon said date had elected to declare, and had declared the whole indebtedness secured by said mortgage immediately due and payable and as hereinabove alleged, and the amount due these defendants from the plaintiff on said date was the total sum of $3,611.87.

### IX.

"That on or about said 14th day of April, 1930, these defendants made a verbal agreement with the plaintiff and her husband E. Richard Shipp, wherein

and whereby these defendants agreed to accept a deed for the West half of Lot 7 in Block 41 Capitol Hill Addition to the City of Casper, Natrona County, Wyoming, in full and complete payment of the mortgage indebtedness, and in pursuance of such agreement, plaintiff and her husband on or about said 14th day of April, 1930, made, executed and delivered to the defendant Trustees their deed, which said deed was filed for record and recorded in the office of the County Clerk of Natrona County, Wyoming, on the 26th day of May, 1930, in Book 64 of Deeds, on Page 141, a true and correct copy of which is hereto attached, marked 'Exhibit C' and by reference herein made a part hereof.

### X.

"That these defendants, as consideration for the deed hereinabove described, agreed to release and discharge the mortgage hereinabove described, and in pursuance of such agreement the defendant Trustee on or about the 20th day of March, 1931, made, executed and delivered to plaintiff and her husband, a release of said mortgage, which said release was recorded in the office of the County Clerk of Natrona County, Wyoming, March 27th, 1931, in Book 55 of Mortgages, on page 49."

The affirmative allegations appearing in the several answers of the defendants as recited above were put in issue by replies on the part of the plaintiff. There was no offer in any of plaintiff's pleadings to refund to defendants or either of them any of the sums of money advanced or expended by them.

The case was tried to the court without the intervention of a jury, with the result that a general finding was made in favor of the defendants, and in connection therewith additional findings were incorporated in the judgment as follows:

"1. That during the time of the transactions herein, E. Richard Shipp and plaintiff were husband and wife.

"2. That for many years E. Richard Shipp acted as agent for plaintiff in all of her business transactions,

and signed her name to many papers, including the instruments involved in this suit.

"3. That plaintiff appeared in person before a Notary Public and acknowledged the execution of the deed and mortgage in question."

As conclusions of law the court found:

"That by acquiescing in her husband acting for her as agent and acknowledging the signature placed by him on the deed and mortgage in this cause, plaintiff adopted the signature as her own, and that such signing of the deed by him did not constitute forgery.

"That as plaintiff's agent, E. Richard Shipp attended to all of the details surrounding the securing of the loans, making the mortgages and deed involved herein and received the consideration therefor, a large portion of which was applied in paying general and special taxes and erecting improvements on the property."

The judgment rendered was that plaintiff take nothing by her petition; that the instruments sought thereby to be cancelled were valid and that defendants recover their costs. A motion for new trial was made by plaintiff and overruled, due exception being saved to the court's action thereon.

It is apparent that the controlling question in the case is whether the two instruments, the mortgage of date May 27, 1925, and the warranty deed dated April 14, 1930, described above, are valid and binding upon the plaintiff.

There is no claim advanced for her that any of the defendants were parties to any fraud, misrepresentation or bad faith in connection with said instruments or the transactions they represent, and no evidence in the case indicates that they were.

Plaintiff testified that she never signed these instruments, never authorized anyone to sign them for her, never saw them prior to her husband's death and never acknowledged either one. She also says that she "never

received any of the benefit" of the money obtained from the delivery of the note which the mortgage aforesaid secured. In short, she denied all knowledge of any of these transactions.

Additionally she stated as a witness in her behalf that since 1905, when she and her husband began living in Casper, she had very little business experience in the way of transferring property except observation and sometimes signing a deed; that her husband took care of the property here involved and directed the renting of it; that he was her assistant for the purpose of renting, paying taxes, insurance, and special assessments on her property; that she never had any difficulty with her husband about money or property matters; that her husband conveyed his homestead to her; that she transferred part of it to an investment company, which had the property platted into lots and in 1922 reconveyed to her more than 300 lots; that her husband took care of her interests in this real estate; that she does not remember giving a single one of some 32 warranty deeds to various persons for a number of these lots, said deeds being listed in the abstract of lots in the County Clerk's office of Natrona County. The following questions and answers appear in her cross-examination:

"Q. And whatever money you had, whether it came from his efforts and earnings or his property, or your property, was devoted to the purpose of the family?

A. Mr. Shipp always considered me the economist of the family in spending and saving money.

Q. Whatever money you had was for the two of you, in keeping up the home and paying assessments on property and taxes and things of that kind?

A. Yes, who else could I have asked to help me but my husband, he was an attorney.
* * *
Q. And the money that was taken to the bank, I be-

lieve you testified in the preceding case was put into the account in the name of E. Richard Shipp?

A. Just put in for specific purpose of sickness, death, insurance and taxes.

Q. And that was money collected for rents?

A. Sometimes Mr. Shipp added from his income, I was his wife, he supported me.

Q. He always devoted whatever income he had to your support?

A. Always, I desired to make money and did.

Q. Now on the 11th day of June, 1925, did you personally pay any taxes upon any of that property?

A. I have never paid personally any of my taxes from the year I was married, 1889. I don't know whether you know it or not, anyway I am never on the streets of Casper, I have never been a strong woman.

Q. Mr. Shipp during all your married life and during all the time here took care of your improvement assessments?

A. You mean paving?

Q. Yes.

A. Yes, it was a mutual fund of money, there wasn't anything that I wanted that he would not have given it all to me."

The notary, George W. Ferguson, who signed the acknowledgment to the aforesaid mortgage given to the Association, as a witness for the defendants, stated that he was an attorney at law and assistant attorney general of this state; that in 1925 he was engaged in the practice of his profession at Casper and was then a notary public in Natrona County; that he knew both the plaintiff and her husband; that he and plaintiff's husband had their offices in the same building in Casper; that he signed and sealed the acknowledgment on said mortgage and that the facts recited in the certificate thereof were true; that in June, 1925, when the acknowledgment was taken, he was not employed by

either the Association or Mr. and Mrs. Shipp except as notary. On cross-examination this witness testified that he had no independent recollection whatever of having taken Mrs. Shipp's acknowledgment to said mortgage; that he would testify that she appeared before him and made that acknowledgment; that he never has taken Mrs. Shipp's acknowledgment when she was not present; that he does not know whether the name signed to said mortgage was her signature. On his re-direct examination the witness stated he never acknowledged a mortgage deed without the parties appearing before him, it being his absolute practice to require them to be present.

The notary John J. Hancock, who signed the acknowledgment to the aforesaid warranty deed dated April 14, 1930, likewise testified as a witness for the defendants, his testimony being of much the same character of that given by Mr. Ferguson. He stated that he was an attorney at law and a notary public in Natrona County on April 14, 1930; that he knew Mr. and Mrs. Shipp prior to April, 1930; that so far as he knows the facts stated in the certificate of acknowledgment were true; and that he never, up to the time the acknowledgment was taken, had been employed by either the Association or its Trustees. On cross-examination he testified that other than the acknowledgment he had no independent recollection whether Mr. and Mrs. Shipp appeared before him in person; that he and Mr. Shipp officed in the same building and on the same floor when the acknowledgment was taken.

It is familiar law that it is not necessary that a party to an instrument should himself sign it in order that he be bound thereby. It is established that a signature made for a person by another and acting in his presence and at his direction or request, unless some special statute interferes, has the same validity as though written by the party himself. 58 C. J. 726, 727

and cases cited. Under such circumstances the person writing the name is deemed the mere mechanical means whereby the party whose signature is written expresses his own purpose and acts for himself. 58 C. J. 728. It is settled law that a person's signature may be printed, stamped or typewritten. 58 C. J. 729 and cases cited. It is not always essential that a person's signature be written in his presence in order that he be bound by it. The text last cited (58 C. J. 728, 729) states on the authority of many cases that "a party may also adopt a signature written for him by another." It has been said too that a signature written in a party's absence may be adopted even when forged. Blaisdell v. Leach, 101 Cal. 405; 35 P. 1019; Mondragon v. Mondragon, 113 Tex. 404; 257 S. W. 215; 4 Thompson on Real Property 911; 57 A. L. R. 528, note and cases cited.

What then is necessary to be done in order to accomplish an adoption of the signature of a person's name written by another and in that person's absence? Doubtless after a signature had previously been affixed to a contract or deed and the person whose name it purported to be voluntarily stated that the signature was his, in the presence of the other contracting party, with the result that the latter acted to his detriment in any way on the faith of such statement, there would be an adoption of the signature. The person making the statement would be bound by it. See Pitney v. Pitney, 55 Cal. App. 22; 202 P. 940 and cited cases. It is evident that elements of estoppel in pais appear in such circumstances, and that would seem to be so as well to some extent at least in the cases involving acknowledgments of signatures written by another than the one making the acknowledgment and presently to be mentioned.

Indicating that strictly speaking there is a distinction between "adoption" and "ratification" 2 C. J. 468 says that:

"The term 'adopt' or 'adoption' is often used in its broader sense in defining ratification, but in its legal sense there is a distinction between 'adoption' and 'ratification,' and accurately speaking a ratification is an adoption and more. It is the acceptance of a previously unauthorized contract and takes effect from the making of such contract, whereas adoption is in legal effect the making of a contract as of the date of the adoption. A ratification implies an existing person on whose behalf the contract might have been made at the time. An adoption, however, may be made by a person who had no legal existence at the time the contract was made on his behalf, and is peculiarly applicable to the law of corporations, where a corporation, after its organization, adopts contracts made by its promoters or agents before the corporation is organized. One may, if he will, adopt for his own use the terms of any contract that suits his purpose; he may ratify a contract only when it was originally made for him without authority."

In Schreyer v. Turner Flouring Mills Co., 29 Ore. 1; 43 P. 719, the differentiation is undertaken to be made in the following language:

"It has been said that the adoption of a former contract is the making of a contract as of the date of the adoption. McArthur. v. Printing Co., 48 Minn. 322; 51 N. W. 216. In their primary significance there is a manifest distinction between 'adoption' and 'ratification.' The one signifies to take and receive, as one's own, that with reference to which there existed no prior relation, either colorable or otherwise; while the other is a confirmation, approval, or sanctioning of a previous act, or an act done, in the name or on behalf of the party ratifying, without sufficient or legal authority—that is to say, the confirmation of a voidable act. But, as the terms relate to contracts, some lexicographers treat them as synonymous."

Passing now to the effect to be given a party's name affixed to an instrument and written thereon by another when such party formally acknowledges that the signature is his, we find 1 C. J. 786, in connection with the citation of many cases, stating that:

"It is generally held that by acknowledging an instrument the person making the acknowledgment adopts as his own the signature thereon, although it may have been written by another, and thereby renders the instrument effective."

In 57 A. L. R. 525, note, we find it also said that the principle that:

"A person, by appearing before an officer and making a formal acknowledgment of an instrument, thereby adopts as his signature his name written to the instrument by someone else, is supported by the following cases";

Decisions from nineteen different jurisdictions in the Union are then listed. See also 4 Thompson on Real Property, 741, § 3649; Idem 911, § 3839; 2 Page on Contracts 2077, § 1181. We think that the rule as outlined by these authorities must be taken as well established.

The law of this state declares (§ 75-107, W. R. S. 1931) that:

"In all the courts within this state the certificate of a notary public over his hand and official seal, shall be received as presumptive evidence of the facts contained in such certificate; provided, that any person interested as a party to a suit may contradict, by other evidence, the certificate of a notary public."

More than thirty-two years ago, in Adams v. Smith, 11 Wyo. 202; 70 P. 1043, this court, having before it the law last above quoted, (then § 2602, R. S. 1899), and discussing the evidence necessary to overthrow a notary's certificate of an acknowledgment, said:

"It is a well settled rule, as well in those states where such certificate is held or declared to be *prima facie* evidence only, as where it is held conclusive, in the absence of fraud or duress, that to impeach the certificate the evidence must be cogent, clear and convincing. (1 Devlin on Deeds, Sec. 531. ) In Wisconsin it is said that the evidence must be perfectly clear, convincing and satisfactory. In the American and English Encyclopedia of Law the rule is stated to be that the evidence to impeach the certificate must be clear and convincing beyond a reasonable doubt. (1 Ency. L., 560.) And in Cyclopedia of Law and Procedure, that the proof to overthrow a certificate regular on its face must be so clear, strong and convincing as to exclude every reasonable doubt as to the falsity of the certificate. (1 Cyc. 623.) And many cases are cited in support of the text in both of those works.

"The burden of proof rests upon the party assailing the certificate, since strong presumption exists in favor of its truth. The certificate itself is entitled to some consideration, where it is regular on its face. It is quite generally held that the unsupported testimony of the grantor is not sufficient to overcome a certificate regular on its face, especially where the certificate is supported by the testimony of the officer who took the acknowledgment, or by other competent evidence. (1 Cyc. 623; 1 Ency. L. 561; Smith v. Allis, 52 Wis. 337.)

"The rule that the evidence to overcome a certificate of acknowledgment to a conveyance of real estate must be clear, convincing, and satisfactory, is so elementary that we do not regard further citation of authorities necessary upon that proposition. It is a highly salutary rule, and founded upon most satisfactory reasons. The security of land titles would rest upon a very unstable basis were the rule otherwise. We are not prepared to say that in every possible case the unsupported testimony of the grantor will be insufficient to impeach a certificate of acknowledgment. But, as a general rule, such testimony should be supported either directly by testimony corroborative of the grantor's assertions, or by evidence of facts and circumstances that render the grantor's testimony very probable; and in connection with clear and consistent statements of the

grantor make the proof of the falsity of the certificate satisfactory and convincing."

The court also quoted from Young v. Duvall, 109 U. S. 573; 27 L. Ed. 1036, to the effect that if the certificate "can be contradicted, to the injury of those who in good faith have acted upon it, the proof to that end must be such as will clearly and fully show the certificate to be false or fraudulent. The mischiefs that would ensue from a different rule could not well be overstated. The cases of hardship upon married women that might occur under the operation of such a rule are of less consequence than the general insecurity of titles to real estate, which would inevitably follow from one less rigorous."

The later authorities in this country, so far as we have been able to discover, have not departed from the principles thus announced. The following citations will illustrate:

In 1 R. C. L., 299, it is said:

"It seems probable that, as a rule, the testimony of the parties to the suit or other interested witnesses is insufficient to overcome the force of the certificate. It is settled beyond question that the testimony of the party whose acknowledgment is purported to be certified, when unsupported by other evidence, is insufficient to overcome the certificate of the officer. Nor will a slight corroboration of the testimony of the acknowledging party falsify the certificate."

In Clegg v. Eustace, 40 Ida. 651; 237 P. 438, the court remarked:

"A certificate of acknowledgment, complete and regular on its face, raises a presumption in favor of the truth of every fact recited therein. Baldwin v. Snowden, 11 Ohio St. 203, 78 Am. Dec. 303; Martin v. Evans, 163 Ala. 657, 50 So. 997; Bell v. Castleberry, 96 Ark. 564, 132 S. W. 649; Ford v. Ford, 27 App. D. C. 401, 6 L. R. A. (N. S.) 442, 7 Ann. Cas. 245; Mahan v. Schroeder, 142 Ill. App. 538; Id. 236 Ill. 392, 86 N.

E. 97; Gray v. Law, 6 Idaho 559, 57 P. 435, 96 Am.
St. Rep. 280; Roberts v. Roberts, 176 Iowa 610, 156
N. W. 399; Barbee v. Farmers' Bank of Polo, 240 Mo.
297, 144 S. W. 839; 1 C. J. 893; Bruce v. Frame, 39
Idaho 29, 225 P. 1024.

"The burden of proving a state of facts, which will
overcome the probative force of the certificate, is upon
the party assailing it, and it seems to be the rule that
the testimony of the party acknowledging the instru-
ment is insufficient to overcome the force of the certifi-
cate. Ford v. Ford, supra; Adams v. Smith, 11 Wyo.
200; 70 P. 1043; 41 L. R. A. (N. S.) 1178; note; 1 C.
J. 894; Mather v. Jarel, (C. C.) 33 F. 366; Gray v.
Law, supra.

"This court has held that one acknowledging before
a notary public, the execution of an instrument to
which his name is attached or written, adopts such
signature as his own. First National Bank of Hailey
v. Glenn, 10 Idaho 224, 77 P. 623, 109 Am. St. Rep.
204. The signature becomes his on a theory of adop-
tion and not on the principle of ratification."

Where it was contended that a deed was void be-
cause not signed in the proper handwriting of the
grantor or being his proper mark, and that the proof
showed that his name was signed to the deed by the
same person who took the acknowledgment thereto, in
Simmons v. Dantzler, 152 Miss. 428, 118 So. 829, the
court said:

"Where a person appears before an officer author-
ized to take acknowledgments to instruments, and sol-
emnly acknowledges the signature to an instrument to
be his own, he thereby adopts such signature as his
own. And such acknowledgment has the same force,
we think, applied to a signature without a mark as to
one with a mark. It is different, where a person makes
this solemn acknowledgment designed to give verity
to an instrument being executed by him, from a case
where such signature is merely to be proved by wit-
nesses. In such a case the facts are what control, but
where a grantor solemnly assures the officer taking an
acknowledgment that he signed and delivered the in-
strument, the public are entitled to rely upon such

solemn acknowledgment, and to act upon it, and it can only be avoided for fraud by clearly proven evidence of its having been unlawfully procured; for the presumption is that the certificate of acknowledgment states the truth, which presumption can be overthrown only by evidence so clear, strong, and convincing as to exclude all reasonable controversy as to the falsity of the certificate.

"When a deed is thus solemnly acknowledged and placed of record, the public shall be permitted to rely upon the fact that the officer taking the acknowledgment performed his duty, subject only to be disproved by clear and positive proof of fraud. To hold otherwise would make it practically impossible to rely upon public records. The records then would fail to give that protection necessary for the carrying on of transactions dealing with land so essential to the public welfare."

The brief opinion of the court in Morris v. Shepard, 104 Fla. 121; 139 So. 189, is pertinent here, and reads:

"This was a suit to foreclose a mortgage alleged to have been made, executed and delivered by husband and wife. The defense interposed was in effect that the mortgage embraced homestead property and that the wife had not acknowledged the execution of the mortgage, as is required by section 3803, Rev. Gen. St. section 5676, Comp. Gen. Laws. The mortgage appears upon its face to have been regularly and legally executed and acknowledged. The chancellor found in favor of the complainants and rendered his decree accordingly, from which order appeal was taken.

"The defendants both testified that the wife did not appear before the notary public and acknowledge the execution of the mortgage at the time at which she signed the same, or at any other time. A stipulation between counsel is to the effect that the notary public has no independent recollection of having taken the acknowledgment; that she attached certificates of acknowledgment to various papers executed by the defendants, some of which were acknowledged before her by the wife and others were not. There were no other witnesses called to testify in regard to the acknowledgment.

"It appears that the chancellor in entering his decree followed the rule enunciated by this court in Herald v. Hardin, 95 Fla. 889, 116 So. 863, and cases there cited. Under the facts disclosed by the record the chancellor was warranted in so doing and the decree should be affirmed. It is so ordered.

"Affirmed."

The case of Ware v. Julian, 122 Cal. App. 354, 9 P. (2d) 906, 907, was an appeal by the unsuccessful defendant in a mortgage foreclosure action. Attached to the instrument in question was the certificate of acknowledgment in regular form of a notary public, reciting that Sue C. Julian "known to him to be a party whose name is subscribed to the within instrument, personally appeared before him and acknowledged that she executed the same." The following excerpt from the opinion discloses certain testimony given on the trial and the appellate court's view of the law applicable thereto:

"Appellant on the trial testified that she had not signed the note or mortgage or appeared before the notary public and acknowledged the execution of the mortgage.

"The trial court found that appellant executed and delivered both note and mortgage. Appellant attacks these findings as being without support in the evidence. The certificate of acknowledgment attached to the mortgage was *prima facie* evidence of its due execution (Code Civ. Proc. § 1951; Thomas v. Fursman, 177 Cal. 550, 171 P. 301), and the only question is whether the certificate of acknowledgment standing alone can support the finding of the trial court against the parol evidence of appellant that she did not sign the note and mortgage nor acknowledge the execution of the mortgage. The precise question seems not to have been passed upon by the courts of this state, but the overwhelming weight of authority in other jurisdictions is to the effect that a certificate of acknowledgment will support a finding of the truth of its recitals against parol evidence contradicting it. The rule is thus stated in Albany County Sav. Bank v.

McCarty, 149 N. Y. 71; 43 N. E. 427, 431, by the Court of Appeals of New York: 'We think that, as between the parties, a certificate of acknowledgment, when read in evidence, makes out a *prima facie* case as strong as if the facts certified had been duly sworn to in open court by a witness apparently disinterested and worthy of belief. The legal presumption of the proper performance of official duty by a public officer requires that this effect should be given it. Downing v. Rugar, 21 Wend. (N. Y.) 178 (34 Am. Dec. 223). While the evidence is not conclusive * * * it is of such a character as, standing alone, to send a case to the jury, so that they may decide between the probative force of the certificate supported by the presumption that it states the truth, on the one hand, and the evidence produced in rebuttal, whatever it may be, on the other.'

"That this is the generally accepted rule, see Jones, Commentaries on Evidence, vol. 3, § 490, pp. 379-384; case notes in Ann. Cas. 1917A, pages 368 et seq.; 7 Ann. Cas. 245 and 54 Am. St. Rep. 148; 1 R. C. L. p. 299, § 90; 1 C. J. p. 898, §§ 285, 286.

"The reasons for this rule are well stated in 1 C. J., pp. 897, 898: 'The reason for these rules are obvious and satisfactory. They are essential to the security of titles. If the solemn deed of a party to real estate, duly attested by a public officer and recorded according to law, may be avoided by the grantor's individual oath or by anything short of clear and convincing evidence, the efficacy of recording statutes is largely destroyed, and the title to such property is precarious indeed. Public policy, as well as individual security require that the ownership and peaceful possession of land should be subjected to no such hazard.' "

Applying the legal principles announced by these authorities to the case at bar, we think it clear that the trial court could reasonably find as it did in effect that the certificates of acknowledgment signed by the two notaries, Ferguson and Hancock, had not been shown by the plaintiff to be untrue. There was no substantial evidence before it to support a conclusion that these certificates had been impeached within the rule promulgated by this court in Adams v. Smith, supra, and

the conflict of testimony between the plaintiff on the one hand and that of the notaries taken with their certificates of acknowledgment on the other, is quite sufficient to protect the general finding for defendants made below. We find no evidence in the record, other than the assertion of the plaintiff, which indicates that either of these certificates of acknowledgment did not represent the facts. The plaintiff undoubtedly was a deeply interested party to the litigation and would profit substantially if her claims were upheld. The notaries were each disinterested, not only at the time the acknowledgments were taken, but when they gave their testimony in the case. That testimony supported their several certificates. Each notary stated that his certificate in question was true. Additionally the practice of at least one of these officers was as he testified, to require the actual presence of parties when their acknowledgments to instruments were taken. The trial court evidently thought that the evidence adduced by plaintiff to overcome these certificates of acknowledgment was not "clear, convincing and satisfactory." A careful examination of the record here leads us to think so too.

That the notaries did not recall the circumstances connected with the taking of these acknowledgments independently of their several certificates is hardly proof throwing doubt upon their verity. The transactions occurred, the one, more than eight years before, and the other about three years previous to the trial of this case. The details of routine business occurring on a day years before do not ordinarily stay fixed for recollection in most minds. Special circumstances happening at the time may, of course, serve as a peg upon which to hang exact memory, but usually they do not prevail.

Entertaining the views expressed above, and in the light of all the evidence, we regard the contention of

plaintiff that the writing of his wife's name upon the instruments in question were forgeries made by E. Richard Shipp untenable as well as immaterial. We think the evidence utterly fails to show that Mr. Shipp affixed his wife's name to the several instruments aforesaid with intent to "prejudice, damage or defraud" her. (W. R. S. 1931, § 32-1002.) Unquestionably she and the property owned by her received the benefit of most of the money obtained by her husband from the Association through the original loan. Indeed what he received personally for use in payment of his office rent certainly benefited her indirectly, for, as she said, he was supporting her from his earnings.

We do not consider that the question of agency on the part of plaintiff's husband to represent her in the execution of the mortgage and deed here attacked is necessary to be reviewed. So far as the matter of the pleadings in the case being in proper form to raise the issues disposed of by the trial court, as we see it they were sufficient. Plaintiff asserted in her petition affirmatively that she did not sign any of the instruments here involved and this was denied by the several answers filed in the case. This was all that was necessary to raise the issue whether the signatures were legally hers. The district court found adversely to her contention on this matter, and, as already indicated, properly so. This court has held that it is unnecessary to specifically plead ratification and that it may be shown under a general allegation that the act was done or the contract made for the principal. State Bank v. Haun, 30 Wyo. 322, 222 Pac. 45. In the instant case the answers affirmatively alleged also that plaintiff and her husband made, executed and delivered the questioned instruments. The proof shows they legally did so. Under the holding in the Haun case we can see no reason why the pleadings now under review interfere with the introduction of such proof.

Criticism is presented relative to the findings made by the trial court, and it is contended on behalf of the plaintiff that they are inconsistent in a number of particulars as regards the general finding made in the case. By her assignments of error plaintiff asserts that neither of the several findings of fact nor the judgment in this record is supported by sufficient evidence, and thus has reqested an examination of all evidence given on the trial incorporated in the bill of exceptions and now before us for review of these assignments. All of the evidence in the case being here we have examined it to ascertain if the errors complained of were prejudicial, and our conclusion is that they were not so. Only errors prejudicial to the complaining party require reversal of judgments in this court. W. R. S. 1931, § 89-2202; Hilliard v. Douglas Oil Fields, 20 Wyo. 201; 122 P. 626.

Other questions appearing in the record have been ably argued by the parties. So far as we have found it necessary to examine these, it would seem that several contentions of the defendants in connection therewith would also lead to an affirmation of the judgment in this case. However, deeming what has been said sufficient to dispose of the cause in accordance with its law and the facts as we view them, and being of the opinion that the district court's judgment was right, that judgment will be affirmed.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.