## ELLIS ET AL. v. FEDERAL LAND BANK OF OMAHA ET AL.

(No. 2189; June 11, 1941; 113 Pac. (2d) 954)

(Rehearing denied without opinion, September 16, 1941)

For Lillian G. Ellis, one of the plaintiffs in error, there was a brief by *A. H. Maxwell* of Lander, *E. E. Enterline* and *Madge Enterline* of Casper, and oral argument by *Mr. Enterline*.

For the defendants in error, there were briefs by *G. H. Paul* of Riverton, *H. B. Durham* of Casper, and *F. L. Pierce* of Omaha, Nebraska, and *F. B. Sheldon, Jr.* of Riverton, and oral arguments by *Messrs. Durham* and *Pierce.*

BLUME, Justice.

This is an action in ejectment brought in June, 1937, by the Federal Land Bank of Omaha, Nebraska, as plaintiff, against Lillian G. Ellis (generally referred to herein as Mrs. Ellis), as defendant, to recover possession of about 3469.81 acres of land situated in Fremont County, Wyoming. One Lee Simonson and the Yellowstone Sheep Company were subsequently made parties to the action at the request of Mrs. Ellis. Upon issues joined, the court entered judgment in favor of the

plaintiff and the Yellowstone Sheep Company. From this judgment Mrs. Ellis has appealed. The plaintiff will ordinarily herein be referred to as the bank, or as plaintiff bank.

The plaintiff bank obtained a mortgage on the premises in controversy in 1923, foreclosed this mortgage in 1934, and bought it at a foreclosure sale in January, 1935. It was entitled to a deed in the fall of 1935, but delayed obtaining it, by agreement of the parties, until some time in 1936. The defendant Mrs. Ellis was the owner of the equity of redemption. In 1935 and the early part of 1936, she attempted to make an arrangement with the plaintiff bank to obtain a new loan, so that she could retain the land. It seems, however, that she was unable to do so, and thereafter entered into negotiations for a lease on the land, and at the same time endeavored to obtain from the plaintiff bank an option to purchase the land. These negotiations were conducted on April 17, 1936, at Lander, Wyoming, by Ivan E. Packard on behalf of the bank, and by Mrs. Ellis and Mr. Maxwell, her attorney, on her behalf. A proposed contract was drawn up by the parties, wherein Mrs. Ellis was given a lease to the land till March 1st, 1937, at a rental of $1100. An option to purchase was appended with substantially the following provisions, namely: The purchase price was to be the amount of plaintiff's investment as of March 1st, 1937, which was approximately $22,000 at the time of the proposed contract; Mrs. Ellis was to give a mortgage on 640 acres of land owned by her, this mortgage to remain in full force and effect during the entire term of the contract, and to be in lieu of a down payment; an abstract of title was to be furnished, showing clear title in Mrs. Ellis; also three different leases for state lands were to be assigned to the plaintiff bank, and renewals thereof were to be obtained; annual payments of $1500 were to be made payable November 1st of

each year. This proposed contract was signed and acknowledged by Mrs. Ellis on April 17, 1936. It was not signed by the plaintiff bank, but the name "Federal Land Bank of Omaha" was typed above the name of Mrs. Ellis. It is disputed as to whether Mr. Packard typed the name, or whether it was done by a stenographer in the office of Mr. Maxwell. The proposed contract was not sent to the bank at Omaha until the latter part of June, 1936. On June 24, 1936, Mrs. Ellis executed a mortgage on the 640 acres of land above mentioned to secure the sum of $1100, and reciting that it was given to secure the payment of the rental above mentioned. It was filed for record in April, 1937. It was perhaps forwarded to the plaintiff bank at the same time as the proposed contract above mentioned. On or about March 30, 1937, Mrs. Ellis, at the behest of the bank, executed a so-called supplemental agreement which, excepting caption and signature, is as follows, to-wit:

"WHEREAS, under date of April 17, 1936, LILLIAN G. ELLIS of Fremont County, State of Wyoming, negotiated for and signed a lease agreement as lessee for the rental and lease of certain described lands situated in Fremont County, Wyoming, covering approximately 3,469.81 acres more or less; and

WHEREAS, the said form lease was forwarded to The Federal Land Bank of Omaha, lessor, for examination and acceptance, and

WHEREAS, said lease agreement contained a paragraph wherein the Party of the First Part (The Federal Land Bank of Omaha) agreed to option to the said Lillian G. Ellis the land described, which clause was an option to purchase the said described land; and

WHEREAS, the lessor, (The Federal Land Bank of Omaha) refuses to accept said lease with such option to purchase therein.

NOW, THEREFORE, Lillian G. Ellis, as lessee herein, agrees and ratifies said lease agreement without said option clause, it being the express purpose of this agreement to amend said lease agreement referred to

above insofar as it shall pertain to any option therein contained for purchase of the property by Lillian G. Ellis. This Supplemental Agreement should be attached to the lease papers and included as a part of the same and is made for the express purposes of amending the original lease agreement to be and to include strictly a lease of the premises described therein for the year 1936 and ending March 1, 1937, the rental to be $1100.00 and payment of State and County taxes for the year 1936, and no option for the purchase by the lessee to be included."

About that time negotiations were in progress with Lee Simonsen for the purchase of the 3469.81 acres of land above mentioned, and Mrs. Ellis testified that she signed the supplemental agreement only because of the assurance on the part of Mr. Packard (denied by the latter) that Mr. Simonsen would get the land, and that she had a verbal agreement with Simonsen that after five years she would have the opportunity to repurchase the land. Simonsen, the Yellowstone Sheep Company and some parties from Riverton bid against each other to obtain the land, and it was finally sold by the bank on April 6, 1937, to the Yellowstone Sheep Company for the sum of $30,100.00. Simonsen filed a cross-petition and claimed to have become the purchaser of the land during these negotiations. The court found against him, and he appealed, but he failed to prosecute his appeal and it has been dismissed. So the case is before us only on the appeal of Mrs. Ellis.

The trial in this case was commenced on May 6, 1940. Mrs. Ellis on that day filed an amended and supplemental answer. In it, and now in this court, she claims to be entitled to retain the possession of the lands in dispute by virtue of the option agreement of April 17, 1936, and she tendered the amount due thereunder. She never delivered the leases mentioned in that option, but claims to be excused by reason of the fact that these leases were in litigation at the time of which the

plaintiff bank had knowledge at the time. We shall not pause to consider that feature of the case, but proceed at once to determine whether or not plaintiff obtained an option to purchase the land, for unless she did, the judgment herein must be affirmed. When the negotiations, and the proposed contract of April 17, 1936, were submitted to the bank, it had the right, of course, to approve of the lease and disapprove of the option to purchase, and the supplemental agreement dated March 30, 1937, is an acknowledgment on the part of Mrs. Ellis that that is what the plaintiff bank did. And the parties, of course, had a perfect right to complete the contract with modified terms, and the supplemental agreement, together with the action of the bank as at least indicated by the filing of the mortgage, shows that this course was adopted. Counsel for Mrs. Ellis argue that there was no consideration for this supplemental agreement. But they have evidently misunderstood it. They apparently argue as though it constituted a release of the option agreement; that no consideration was given therefor, and hence it is invalid. If that were true, the argument would have a valid basis. But the agreement shows that to be untrue. It clearly is not a release of any valid agreement entered into previously. It states that no option was ever granted by the bank, but that the terms of the agreement of April 17, 1936, should be, and were in fact, limited to those relating to the lease. No consideration is required, of course, for an acknowledgment of what the contract in fact is or was. The supplemental agreement contains the clause reading: "It being the express purpose of this agreement to amend said lease agreement in so far as it shall appertain to any option contained for the purchase of the property by Lillian G. Ellis," and counsel state that they fail to understand just how the bank can amend an agreement which it at the same time claims does not exist. This

clause refers to the contract as originally drafted, not as actually agreed on, and it does not contradict the explicit recognition that the option to purchase was in fact never assented to by the bank. Judging from a letter of Mrs. Ellis in the record, and the fact that she had an agreement with Simonsen to the effect that she could repurchase the land after five years, she realized at the time when she signed the supplemental agreement that she had no option. But if that is not true, then she had abandoned the thought of purchasing the land from the bank under the option. In any event, she acknowledged that she had no option. None of her testimony, so far as we recall, contradicts that statement. Her claim that she would not have signed it except upon the assurance of Mr. Packard that Lee Simonsen would get the land would not have any such effect. It is difficult to see, accordingly, how it can be said that there is no substantial evidence in the record to sustain the judgment of the trial court, and it would hardly seem to be necessary to consider any other evidence in the case. However, we shall briefly discuss the main matters upon which counsel for Mrs. Ellis rely to show that the option agreement was a valid agreement binding upon the plaintiff bank.

It seems to be contended that the typed signature on the contract dated April 17, 1936, reading "Federal Land Bank of Omaha," is a sufficient signature on the part of the plaintiff bank, and is binding upon it. We are cited to 19 C. J. S. 704, where it is stated that "it is not necessary to show a formal execution of the contract, unless required by statute, where there is other competent evidence of the terms of the contract, and of the assent of the parties to it * * * although it is necessary to show in some form the assent of the corporation to the contract." This citation does not sustain the contention of counsel, for it requires evidence independent of the typed signature to show the

assent of the parties, and that independent evidence is lacking in this case. It is true that the name of a party to a contract may be printed, stamped or typewritten. Rowray v. Casper Mutual Building and Loan Association, 48 Wyo. 290, 45 P. (2d) 7. But it would be a rather dangerous rule to hold that merely because the signature of a person or a corporation appears to be typed on a document, it has binding effect. And it has been held that it has no such effect. U. S. Shipping Board etc. v. Tabas, 9 F. (2d) 648, 22 F. (2d) 398. In that case the typed signature was that of a sovereignty. But it must be equally true in the case of a person or corporation.

It is claimed that Mr. Packard typed the signature. He denied that, but we do not think the point is of significance. It does not appear that he had any authority to give his assent that the typed signature should be the signature of the plaintiff bank. If he had claimed such authority, he would, naturally, have signed it. The fact that he did not do so must have been a clear indication to Mrs. Ellis and her attorney that he had no such authority. Mr. Packard told them, moreover, that the bank was opposed to embodying an option in a lease, and that it was doubtful that the plaintiff would approve it. This, too, shows that it must have been understood that Packard had no authority to bind the bank. Furthermore, he testified that he was the field man for the bank; that as such, his duty consisted "in finding, in obtaining offers for the purchase of real estate owned by the bank * * * and to assist in the preparation of leases to be submitted to the bank." There is no evidence in the record to show the contrary. He, accordingly, had no authority to bind the bank to the option of purchase.

Mr. Paul, attorney at Riverton, commenced, in the early part of 1937, an action of forcible entry and detainer on behalf of the bank against Mrs. Ellis. In

the petition filed in that case, before a justice of the peace, it was stated that the option agreement was part of the lease agreement entered into by the parties. That fact is claimed as showing the execution of the option agreement by the bank. Mr. Paul testified, however, that he had no authority from the bank to make this statement, and the trial court had a right to accept that testimony.

Counsel further contend that when the bank accepted the mortgage and filed it of record in April, 1937, it thereby adopted and accepted the contract as a whole—including the lease and the option to purchase. But we do not think that the trial court was bound to come to that conclusion. The record in regard to that mortgage is rather obscure. It was dated and acknowledged on June 24, 1936, and was perhaps sent to plaintiff bank along with the agreement for lease and option to purchase. It is given for the sum of $1100, and recites that it is given to secure the payment of the rental. It is not a mortgage given to comply with the option agreement, for that option states that the mortgage therein mentioned should be in force and effect during the whole term of the agreement, which seems to indicate that it should secure the whole purchase price in the approximate amount of $22,000. The bank, as already stated, had the right, as it did, to approve of the lease and disapprove of the option to purchase. The mortgage recites that it was given to secure the rental of $1100. The filing of the mortgage, accordingly, was entirely consistent with the actual contract entered into by the plaintiff bank.

While it would, doubtless, have been a gracious act on the part of plaintiff bank to have given Mrs. Ellis the chance to retain the land, it was not compelled to do so. Counsel for Mrs. Ellis insist that it used "unjust and unfair tactics" in its dealings with Mrs. Ellis. We do not know all of the circumstances in the case, and

do not know whether counsel's statement is correct. The bank had had a mortgage on the land since 1923, and had to foreclose it. In any event, whatever may be the facts in that connection, the bank had the legal right to sell the land to some one else, and we can see no escape from the conclusion that the judgment of the trial court must be affirmed.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.